(74 South. 256)

No. 22127.

MYERS v. LOUISIANA RY. & NAV. CO.

(Feb. 12, 1917.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT ⊂⟹373—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT— "INJURIES ARISING OUT OF EMPLOYMENT."

Where a carpenter employed as a railroad car repairer, while returning along the most practicable route to his work shed after taking measurements on the car for which he was preparing a piece of timber, was knocked down and injured by a swinging door of a car on the adjoining track blowing against him as he was passing, his injuries arose out of his employment within Employers' Liability Act (Act No. 20 of 1914), since the taking of the measurements was as much working on the car as the nailing of a plank on it would have been.

2. MASTER AND SERVANT ⊂⟹371—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT— CAUSE OF INJURY.

The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature ot the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.

3. MASTER AND SERVANT ⊂⟹361—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT— HAZARDOUS EMPLOYMENT.

The employment of a carpenter engaged in repairing railroad cars is hazardous, since it is in and about railroad cars and tracks.

4. MASTER AND SERVANT ⊂⟹385(5)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—"TOTAL DISABILITY."

Under Act No. 20 of 1914, § 8 (d), allowing compensation to an injured workman for injuries producing permanent total disability to do work of any character, the permanent disability of a workman who had lost the use of one leg through breaking the hip bone, from following his regular trade, is not a total disability, since there are many lines of work open to a man in that condition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Disability.]

5. MASTER AND SERVANT ⊂⟹412—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT— TOTAL DISABILITY—BROKEN HIP.

Where an illiterate carpenter 60 years of age had his hip bone broken, as a result of which he had been unable to perform any work up to the time of the trial one year later, and had never been able to follow his trade, since he could do no climbing, and could not even walk without a crutch or at least a cane, and it is possible that he would never be able to secure employment in any other line of work because of his inability to do any but manual work and of his advanced age, the finding of the trial court that his disability was total under Act No. 20 of 1914, § 8 (d), allowing compensation for injury producing permanent total disability to do work of any character, rather than partial under section 8 (c), allowing compensation for permanent partial disability amounting to one-half the difference between the wages before the injury and those he was able to earn thereafter, will not be disturbed, especially since there is no basis to determine the measure of compensation under the latter section, where the employé has been unable to do any work up to the time of the trial.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Suit by George G. Myers against the Louisiana Railway & Navigation Company for compensation under the Employers' Liability Act. Judgment for plaintiff, and defendant appeals. Affirmed.

Thornton & Thornton, of Alexandria, and Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant. Blackman, Overton & Dawkins, of Alexandria, for appellee.

PROVOSTY, J. Plaintiff has brought this suit under Act No. 20, p. 44, of 1914, known as the Employers' Liability Act, for injuries received while in the employ of the defendant company as a carpenter. The work he had in hand was the repairing of a camp car, which stood upon one of the repair tracks in the railroad yard of the defendant company in the city of Alexandria. He had

been working under a shed about 300 feet away from this car upon a piece of timber to be fitted to that end of the car farthest from this shed, and for taking some necessary measurements had gone to this far end of the car, and, in doing so, had passed between the car and a coal car which stood upon another repair track; the space between the two cars being about 6 feet. After he had taken the measurements, he had gone to the other side of the coal car to a shed within a few feet of the coal car to restore to its owner a saw which on his way he had picked up where its owner had left, and probably forgotten, it. And as he was retracing his steps, passing again between the two cars, the door of the camp car, which swung like an ordinary door, instead of sliding as car doors generally do, blew to in a gust of wind, and struck him, and threw him against the coal car, inflicting the injury for which he brings this suit. The route followed by him in thus going to take and returning from taking these measurements was not only the most direct and convenient, but was, in fact, the only available, unless by making a circuit which no one would have thought of making.

[1] The injuries for which recovery may be had under the said Employers' Liability Act must have arisen "out of and in the course of" the employment; and the first contention of defendant is that while the injury in this case arose "in the course of" the employment, it did not arise "out of" it.

This phrase, "out of and in the course of the employment," which in itself appears to be clear enough has given occasion in its interpretation to a great many decisions, both in this country and in England; for it occurs in the workmen's compensation statute of England, which is the prototype of our American statutes upon the same subject, including our said Act No. 20 of 1914. The courts have had no difficulty in agreeing that "out of" does not mean the same thing as "in

the course of," but means something more; that an injury may have been received "in the course of" the employment, and yet not "out of" it. Nor has any difficulty been experienced in ascertaining when an injury is to be considered as having arisen "in the course of" the employment; the difficulty has come in applying to concrete cases the phrase "out of." Before proceeding to the task of applying this phrase to the facts of the present case, it may be well to reproduce some of the expressions to be found in the books as to its meaning.

From an elaborate and apparently exhaustive note in L. R. A. 1916A, p. 41, we take the following:

"It may be stated generally that the phrase 'out of and in the course of the employment' embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake, and which is calculated to further, directly or indirectly, the master's business. * * *

"The risk must be one peculiarly incident to the employment, and not one incurred by every one, whether in the employment or not. Where an injury occurs upon a street from causes to which all persons upon the street are exposed, it cannot be said to arise out of the employment of the injured workman. But it has been said that the criterion is not that other persons are exposed to the same danger; but, rather, that the employment renders the workman peculiarly subject to the danger. * * *

"In order that the injury may be one arising out of the employment, the workman must be acting within the scope of his employment at the time of his injury. * * *"

From Labatt on Master and Servant, p. 5419, we take the following:

"This phrase (out of and in the course of the employment) embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the master's business."

One of the cases cited in support of this text is where a collier was injured by the slamming of an iron gate, through which he was obliged to pass, on the premises of the employer, in the course of his employment. In Bryant v. Fissell, 84 N. J. Law, 72, 86

Atl. 458, the Supreme Court of New Jersey said that the accident arises out of the employment when there is a connection between the conditions under which the work is required to be performed and the resulting injury. In McNicol et al. v. Employers' Liability Ass'n Corp., 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, the Supreme Court of Massachusetts said:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment. * * * But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In Fitzgerald v. Clarke, 99 L. T. N. S. 101, 1 B. W. C. C. 197, Buckley, L. J., said:

"The words 'out of' point to the origin or cause of the accident; the words 'in the course of' to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words 'out of' involves the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment."

However, after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases. Illustrative cases, therefore, will best serve as a guide to what has been considered to be the intention of the statute. An abundance of such is to be found in the L. R. A. 1916A, page 41 et seq., note mentioned above. Thus—

A cabman was shot by a sentry, whose challenge he did not hear, as he was driving an officer into a fort. The court thought the accident arose out of the employment "since he was exposed to a special risk."

A sailor fell down a hatchway while washing his clothes. The work of washing his own clothes was said to be "incidental to the employment of a sailor."

And the same view was taken where a stable boy while eating his dinner was bitten by the stable cat.

And so where a ship carpenter was burnt as the result of a match, thrown away by a shoreman, having accidentally fallen among some shavings. The reason given was that the carpenter was required by his employment to work among shavings, and that he had gotten oil upon his trousers in the course of his work.

Likewise where an insurance collector slipped on a stair while on his rounds. The accident was said to have been brought on by the employment.

But not so where a workman while at his work was stung by a wasp.

Nor where an employé, in her fright at a cockchafer flying into the room, ran her thumb into her eye. Cozens-Hardy, M. R., said:

"It is not enough for the plaintiff to say: The accident would not have happened if I had not been engaged in that employment. He must go further and say: The accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some peculiar danger."

At page 42: Nor where a tuberculous workhouse keeper fell from giddiness brought on by a fit of coughing while he sat on the steps leading to his room. It was thought that "there was nothing peculiar to the employment which rendered the risk greater than that to which other persons were subjected."

Nor where a janitor was overcome by heat while in the street taking a message from one headmaster to another.

Nor where a painter's laborer was knocked down by a tram car while crossing a street to get some paint needed in his work. It was said to have been "merely a street accident to which all persons were subjected."

And so a charwoman sent by her employer to post a letter, who stumbled and fell while on her way to the post office.

But in two cases of collectors injured while riding on a bicycle in the course of duty, one kicked by a horse and the other colliding with a tram car, a different view was taken. It was said that a collector "is peculiarly exposed because of the fact that he is obliged to go out upon the street almost continually." And the same was said in the case of a drayman. But these cases were distinguished in a case where the workman was obliged to go but once or twice a day over a quiet country road; and in another case where the manager of a branch store had to go once a week two miles on his bicycle to submit his books for inspection, and slipped off his bicycle.

A stone mason struck by a slate blown off a neighboring building was allowed to recover, because the stooping position he was forced to occupy in doing his work rendered him less able to see the slate coming.

On the other hand, a carter struck by a piece of iron blown off an adjoining building was denied recovery.

At page 234: An employé going around delivering meat for a butcher stumbled against a bucket on the street. He was denied recovery.

On the other hand, a wagon driver who was injured in jumping off his wagon in order to drive away some boys hanging on the rear was allowed to recover.

"An injury to a city employé, who, after reporting according to custom for instructions as to where he is to work during the day, falls on the sidewalk while on his way towards such place, grows out of and is incidental to his employment."

At page 236:

"An employé sent to repair water mains between the tracks of a railroad is not outside of his employment in going to a hand car ten steps away to put on rubber boots, where that was the only place except the ground that he could sit on in order to put on boots and he had been told to bring the boots with him, and he could perform his work better when wearing them."

"That an injury should arise out of and in the course of the employment, it is not necessary that the employé be actively employed at the time of the injury. Thus a workman exposed to severe weather, and injured while warming himself, may be found to have been injured by accident arising out of and in the course of his employment. So an injury may be found to arise out of and in the course of the employment of a workman, where it is received while he is seeking shelter from a storm and at a place away from the immediate place of his work. And injuries received while necessarily crossing a street to seek toilet facilities arise out of and in the course of the employment. So an employé in a factory is still in the employ of the master while accepting the convenience of a toilet maintained by the employer. * * * "

At page 314:

"Some of the cases, however, make a distinction in the case of workmen whose duties are such that they are obliged to be continuously upon the street, or at least to spend a considerable portion of their time there; the theory being that the very nature of their employment subjects them to street dangers more than persons generally are subjected, and consequently injuries from such dangers must be considered as arising out of their employment. * * * "

[2] In the case at bar the learned counsel for the defendant argue that if the accident to plaintiff had been the result of a hammer flying off the handle or a nail striking him in the eye, a scaffold breaking and throwing him to the ground, or any of the accidents

resulting from the hazards of a carpenter's trade, the injury would have arisen out of plaintiff's employment; but that a door blown to by the wind is not an accident which arises out of a carpenter's business any more than out of a merchant's, conductor's, painter's, housekeeper's, or any other line of business.

As we understand this argument it is to the effect that the cause of the injury, or, in other words, the agency producing it, must be something peculiar to the line of the employment. According to this, if a carpenter had to pass through a certain narrow alleyway on the employer's premises in going to and returning from his work and his foot went through the rotten floor, he could not recover, because he was not engaged in repairing this floor, and in a man's foot going through a rotten floor there is nothing peculiar to the line of business of a carpenter or incidental to the character of the work; but if a messenger boy or a collector, whose work consists mainly in going about from place to place, were to step into this same rotten floor, he could recover, because the accident had arisen out of a risk peculiar to his line of business. Or if the plaintiff in this case, in going to and from his work, had had to walk across the network of railroad tracks adjoining the said two repair tracks and in doing so had been run over by a locomotive, he could not have recovered; but a brakeman or flagman injured under the like circumstances could recover.

This, it seems to us, is putting too narrow a construction upon the statute. It ought to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. This is certainly the view that has been taken in street accidents, where relief has been allowed in certain cases and not in others.

In the instant case the plaintiff would certainly not have been denied recovery if the car had fallen upon him while he was taking the measurements. And the reason would have been that the exigencies of his employment had imposed upon him the risk from his exposure to which he had suffered. But what difference is there in principle between the car falling upon him while he is actually taking the measurements, and its door striking him while he is compelled to be near it on his way to take them, or else on his way back after having taken them? What difference between the case of a brakeman or locomotive engineer or fireman injured because of having to work in and about cars and about railroad tracks in the course of his employment, and that of a carpenter exposed in the course of his employment to the same risk? If one of the former had been struck by this door in going to or from his work we do not imagine any one would doubt that the injury had arisen out of the employment. We can see no difference between their case and that of the carpenter exposed to the same risks, and conclude that the injury to plaintiff arose out of his employment.

The learned counsel for defendant say that plaintiff was not working on the car, but under the shed, and therefore was not exposed to any danger peculiar to railroad operation. But the taking of these measurements was working on the car and in and about railroad tracks, as much so as if plaintiff had been nailing a board on the car or doing any other kind of work in or on it.

[3] Next, defendant contends that this carpenter's work was not hazardous, and that the said statute applies only to employments of a hazardous character; that if it applied to employments not of that character it would be unconstitutional. Plaintiff, on the other hand, contends that the particular work he had in hand was hazardous, since

it was in and about railroad cars and tracks; but that even if it had been otherwise, still it would have been covered by the statute, and the statute would have been constitutional, as witness the decision of the Supreme Court of the United States in Mobile & Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

Agreeing, as we do, with the first branch of this contention of plaintiff's, as appears from what has been already said in this opinion, we are dispensed from going into the constitutional question thus raised, and refrain from doing so—inviting though the field has been made by the thorough, strong, and clear presentation of the opposite sides of the controversy in the briefs of the learned counsel.

The next and last question is as to whether the disability of plaintiff is partial or total. Section 8 of the statute provides:

"(c) For injury producing permanent partial disability, the compensation shall be one-half of the difference between the average weekly wages of the injured employé before the injury and the average weekly wages which he is able to earn thereafter, subject to a maximum of ten dollars per week, to be paid for a period not exceeding three hundred weeks.  *   *   *  "

"(d) For injury producing permanent total disability to do work of any character, fifty per centum of the average weekly wages, but not more than ten dollars, nor less than three dollars per week for a period not exceeding four hundred weeks."

Plaintiff was at the time of the injury 60 years old. His hip joint was fractured. One year later, at the time of the trial, he was still unable to go about without crutches, and he will never be able to do such parts of a carpenter's work as climbing ladders, or much walking around, or even much standing; but he may get well enough to engage in such manual labor as would not require the use of the injured limb. He will all his life need a crutch, more or less, but may perhaps get so as to be able to go about to some extent with the aid merely of a stick. Up to the time of the trial he had not been able to do any work of any kind; and he testified that, judging from how he then felt, he should never be able to do any.

[4, 5] In the case of Mellen Lumber Co. v. Industrial Commission of Wisconsin, 154 Wis. 114, 142 N. W. 187, L. R. A. 1916A, 374, Ann. Cas. 1915B, 997, the expression "total disability" was interpreted to mean total inability to perform work of the character in which the injured employé was engaged at the time of the accident, regardless of his earning capacity in other occupations. Such an interpretation is not possible under our statute, since its wording is "total disability to do work of any character." We have to hold, therefore, that the disability of a workman who has lost the use of one of his legs from the hip joint down is not necessarily total, since within the meaning of our said statute many lines of work are open to a man in that condition. Inasmuch, however, as up to the time of the trial the plaintiff had been unable to do work of any kind, he was up to that time totally incapacitated; and this incapacity will continue as long as the healing process of nature shall not have been so far accomplished as to enable him to do manual work of some kind. Moreover, the view taken by the English House of Lords in Ball v. Hunt [1912] A. C. (Eng.) 496, 81 L. J. K. B. N. S. 782, 106 L. T. N. S. 911, appears to us to be highly reasonable. Lord Atkinson expressed it as follows:

"The words 'incapacity for work' may mean physical inability to do work so as to earn wages, or it may mean inability to get employment due to the belief of employers in the unfitness of the workman to perform work owing to the injury they perceive he has suffered."

Elderly men are nowadays more or less out of the running when it comes to securing employment, and if by this infirmity plaintiff has been converted from an able-

bodied carpenter securing work regularly in his trade into an infirm unable to secure remunerative employment of any kind, his incapacity must be held, we think, to be total under the statute. He is illiterate, and capable only of manual labor. The statute is one intended to be essentially practical in its operation. For a most illuminating note on this topic of "Total Incapacity under Workmen's Compensation Act," see Ann. Cas. 1915B, 1000.

Another consideration is that, for rendering a judgment predicated upon "permanent partial disability," under paragraph c of section 8, supra, the record furnishes no data. Under this paragraph the judgment has to be for "one-half of the difference between the average weekly wages of the injured employé before the injury and the average weekly wages which he is able to earn thereafter." But how could this difference be ascertained in a case like the present, where the employé had not been well enough to engage in any remunerative employment whatever up to the time of the trial, and perhaps might never be well enough to do so; and, furthermore, even if well enough to work might be unable to obtain employment because of his unavailability resulting from his legless condition aggravated by his age?

The trial court gave judgment as for total disability. We shall affirm the judgment.

Paragraphs 1 and 3 of section 9 of the act, and the opening sentence of section 20, seem to contemplate the possibility of a subsequent change in the judgment to correspond with any change that may take place for better or worse in the condition of the injured person; but the second part of section 20 seems to limit this possibility to a change in favor of the workman, in the event of his condition getting worse, and not to allow any in favor of the employer in the contrary event; however, that is a point not up for decision in the present case.

Judgment affirmed.