MRS. THEOPHILE GAUTHREAUX,       :       NO. 8856
FOR HERSELF AND HER MINOR
    SON                     :       COURT OF APPEAL FOR THE

    VS                      :

T. D. O'KEEFE, RECEIVER          :       PARISH OF ORLEANS
NEW ORLEANS RAILWAY & LIGHT
    COMPANY.                :

                : : : : : : :

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

- - -

WILLIAM A. BELL, JUDGE.

- - -

▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬                                MARCH 19, 1923.

By WILLIAM A. BELL, Judge.

The plaintiff herein, on her own behalf as widow and for her minor son, has obtained judgment against defendant in the full amount accorded her under Section 8, Paragraph 2 (b) of the Employers' Liability Act of Louisiana. Defendant as appellant concedes before this court the facts of this case and also agrees as to the correct basis of the computed liability, if there be any liability. It may be said that the sole contention on appeal is, therefore, upon the question of law as to whether the accidental injury causing the death of the plaintiff's husband according to the admitted facts was one arising out of and in the course of his employment.

The deceased was a conductor on the Villere line in the employ of the defendant company. His duties required him to leave his home early every morning in time enough to get his car out of the Canal Street barn at 4:45 o'clock a.m. His run ended daily at 5:12 p.m. at or near the corner of Canal and Dauphine Sts., and each evening he was allowed, under his contract with the company, an additional time of ten minutes to get to the Canal Street barn and turn in his cash and transfers. In other words, his time of actual work for which he was actually paid ended each day at 5:22 p.m. On June 14, 1921, the deceased reached the barn at about 5:30 p.m., made his returns at once and proceeding across the switch tracks immediately in front of the barn, he went towards the lower side of Canal Street at about 5:30 p.m., for the purpose of catching a Canal Street car going towards his home. In the act of boarding this homeward-bound car of his employer's company he fell beneath its wheels and was almost instantly killed, about 5:40 p.m. Thus it may be seen from the facts of this case that the border line between the zones of employment or non-employment, of service or non-service, is measured by no more than five minutes of time and is of such restricted proportions as may be hardly discernible. The sole defense

242

in this case, however, is predicated upon the contention of law that the five minutes which ticked away fatally for the deceased and propitiously for his employer has precluded the widow and the son from all right of compensation under the Act invoked by them. The contract of employment between the company and its conductors provides as follows:

"Whenever conductors are required to take their cars at a distance from the barn, or are required to leave their cars at a point other than the barn, they shall be entitled to charge at the regular rate per hour for such time as is consumed by the conductor in going to or coming from the barn; it being the sense of this article that where conductors are required to report at the barn at the beginning or conclusion of their runs they shall be paid for all time actually engaged in the service of the company regardless of where they are required to take or leave their cars.

"All motormen or conductors in regular uniform shall be allowed free transportation on all lines."

There is, of course, no issue in this case involving the question of negligence. We are impelled to the viewpoint of our learned brother, then a judge of the district court, who, in his able written opinion or reasons for judgment, has said, in part, as follows:

"The contract with the defendant company provides for free transportation for motormen and conductors while in uniform. This provision is not a mere permission or license, as contended for by counsel for defendant. It is a part of the consideration of the contract. If it was not so provided, and the motormen and conductors employed by the company were required to pay when going to and returning from work the usual fare expected of passengers, their compensation under the contract would be increased at least pro tanto to meet this requirement. This is the inescapable conclusion from the mere reading of the contract itself."

We gather from the evidence of this case the particular fact that the work or employment of the deceased required his presence not only at the barn when reporting for work but also at the barn on retiring or withdrawing from work. Had the accident befallen him as he descended from the morning car depositing him at the barn and before he had mounted his own car which was to leave the barn at the early morning hour above specified, we cannot see

243

that the situation would have been in any way different from that which presents itself under the facts of this case and upon which defendant relies in establishing its contention that the accident happened at a time when the injured employe was not performing services arising out of and incidental to his employment.

The pertinent clauses of the Act which should be considered in connection with the facts of this case are as follows:

> "Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, business and occupations: * * *.
> "Section 2. * * * Receives personal injury by accident arising out of and in the course of such employment, his employer shall pay compensation in the amounts and to the person or persons hereinafter specified."

The last clause of the defendant's answer to this suit is framed in the exact language of the first above paragraphs taken from the Act and reads as follows:

> "That at the time he was killed said Gauthreaux was not performing any services arising out of and incidental to his employment in the course of his employer's trade, business or occupation."

The clean-cut and sole issue therefore made clear by the pleadings in this case is, whether the deceased was at the time of his death performing any services "arising out of and incidental to his employment."

There cannot be found in our jurisprudence more thorough or exhaustive study of the interpretations already given to the above clauses in similar Employer's Liability Acts of America and England than that set forth by our learned and recently retired Chief Justice in the case of Myers v. Louisiana Railway and Navigation Co. 140 La., 937 (74 South., 256). In this cited case, it was the contention of the defendant that while the injury in that case arose "in the course of" the employment, it did not arise "out of" it. In the present case the contention is that the injury at the time it occurred befell the deceased while he was not performing any service either

244

arising out of or incidental to his employment. It may be said in this case as was said by Chief Justice Provosty in the case of Myers v. L. R. & N. Company as follows:

> "However, after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases."

In the Myers case it was contended that the accident did not arise "out of" the employment of the plaintiff for the reason that the injury sustained was of a nature not at all connected with those duties assigned to and being in their nature otherwise performed by the plaintiff. The court found, however, that placing such a narrow construction upon the statute was contrary to the purpose of the lawmaker, and said:

> "It ought to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. This is certainly the view that has been taken in street accidents where relief has been allowed in certain cases and not in others."

The deceased in the case before us, under the circumstances surrounding his departure from the barn and his attempt to mount the conveyance upon which he had a right to ride, was doing, in our opinion those things incident to the nature of his employment such as involved a risk that was greater in its daily necessity for repitition than for persons not engaged in the employment in question. It is to be noted, of course, that in this case the question of negligence cannot arise and, therefore, the fact of the deceased having to be daily in and about a place more or less dangerous to anyone, cannot relieve the defendant of a liability which naturally results from a injury befalling one who was immediately doing that act which was reasonably contemplated between the parties to the employment, no matter how negligent the deceased may have been in performing that act involving his retirement from his daily work. The defendant was actually employed when the accident occurred and the full intention

245

of both the deceased and his employer that the former should daily report to and withdraw from the almost exact spot in which he was injured, indicates a contemplation on the part of both parties that the employment, if not the actual engagement in work, should have been continuous.

We have examined with care the authorities specially cited in defendant's brief and stressed by defendant's counsel, the case of McNicol v. Employers' Liability Corporation (Mass.), 102 N.E., 697. We findthat the facts in this case show that the plaintiff, McNicol, was killed as the result of blows received from an intoxicated fellow-employe, while both were supposed to be engaged in the work of the employer, the bad and dangerous habits of the assaulting fellow-worker having been known to the foreman and other agents of the employer. This case was decided in favor of plaintiff. We find the doctrine enunciated in this case to be quite in accord with and most applicable to the important facts of the case now under our consideration. It was said by the court in this case:

> "An injury may be said 'to arise out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment; But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen, or expected; but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The doctrine as above expressed is given approval by the Supreme Court of this State, as shown by the fact that in the case of Myers v. L. R. & N. Company, the quotation just made by us is fully cited by the learned Chief Justice in the opinion.

We are of the opinion that the danger to which the deceased was exposed was incidental to the character of the work in which he was engaged and that it had its origin in a risk connected with his employment and flowed from his employment as a rational consequence, irrespective of the fact that he may or may not have been negligent in his attempt to board the car which he intended should take him to his home, after his day's work. Another authority cited by counsel for defendant is found in williamson v. Ind. Acc. Com., 16 N.C.C.A., 884, (171 Pacific, 797). In this case a woman undertook to do work which she was neither directed nor expected to do and which was peculiarly hazardous and involved the cleaning of a light shaft connected with a building, and while employed the woman fell through a window to her death. The Court in this case said:

> "It has been said that if the act of the workman which resulted in the accident is one which the employee would not be expected to undertake, or one which the employer would not reasonably command, or expect, the employee to do, the accident does not 'arise out of' the employment."

We cannot see the application of this case to the instance one, for surely the deceased was not expected to undertake nor did he undertake to do anything outside of nor contrary to the scope of his employment.

We find the authorities cited by the judge a qua and particularly stressed by plaintiff's counsel to be peculiarly applicable to the facts of this case, and while they are authorities from other states than our own, they give forceful endorsement to the ruling of this court in the case of Christine Davis, widow of Frank Whitfield, v. the City of New Orleans. No. 8110, Court of Appeal, as well as to the most recent decision of our Supreme Court in the case of Rashel Prevost v. Gheens Realty Co., 151 La., 508 (92 South. 38). In the case of Prevost v. the Realty Co., the issue was not made on the point that the accident had arisen out of and in the course of the

employer's business. We find from a reading of this case and particularly from the examination of the pleadings and the briefs therein filed that this contention is erroneous. In discussing the case the court said:

> "There are only two questions in the case, one is a question of fact--whether the death resulted from an accident. The other is a question of law--whether the man was, according to the facts which are admitted, in the employ of the defendant company at the time of the alleged accident, within the meaning of the statute."

In the brief filed by defendants in the case from which we have just quoted, we find the following: "The defense set up by the pleadings is that the injured man was not injured during the course of his employment," and this statement is borne out by a review of the answer in the suit, particularly paragraph 4, where the defendant alleges as follows: "Respondent admits that (deceased) had completed his work and left the place of his employment and was on his way to his lodging house, but respondent denies that after leaving his place of employment anything that happened to him was in the course of such employment." No issues could be plainer nor more similar to each other than those in the cited case and the case now before us. In the cited case, the deceased, working on a sugar plantation, left the sugar house between the hours of 11 and 12 o'clock at night and while walking from the sugar house to a lodging bunk he was injured by a fall resulting in his death. The next morning all laborers on the plantation were to have been paid off, it being the end of their season's work, and hence it might be stated that the cited case is not as strong as the one before us, for the reason that the plantation hand was injured after his work had permanently ceased, a fact which did not exist in the instant case. He was going to a bunk where he had the privilege of sleeping, just as the deceased in this case was going to a car which he had the privilege of riding upon. In the cited case, the court concluding that the deceased was yet in the employ of the defendant company at the time of the accident, proceeds to say:

"The manager for the defendant company testified that the month for which they were paid had ended at six o'clock that morning, that is, about six hours after the accident had occurred. Prevost was, therefore, not only rightfully on the premises, but actually in the employ of the defendant company when the accident occurred. When an employe is going from his work to his lodging house, on the premises where he works, he is, within the meaning of paragraph 2 of Section 1 of the Employers' Liability Act, 'performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation.' See authorities cited in Myers v. L. R. & N. Co., 140 La., 938, 74 South., 256."

We are of the opinion that both the law and the facts in the case before us justify a judgment for the plaintiff and that the conclusions of the trial court are in every manner correct.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the judgment herein appealed from be and the same hereby is affirmed at defendant's costs in both courts.

JUDGMENT AFFIRMED.                                    MARCH 19, 1923.