ST. PAUL, J.
This is an action for compensation under the workmen’s compensation statute (Act 20 of 1914, and amendments). Plaintiffs’ demand was rejected by the district court, and that judgment was affirmed by the Court of Appeal.
The case was tried upon the following agreed statement of facts:
“(1) That the petitioner herein is the wife of John J. Dyer, and that to the union there were born two children, Hazel and Leon, both minors, age four and two respectively, and both *1093 now living and parties to the above suit with their mother.
“(2) That John J. Dyer, the husband and father of petitioners, was killed on August 13, 1921, while in the employment of the defendant between 4 and 5 o’clock a. m. while making up the fire in the engine of the defendant company.
“(3) That on August 13, 1921, that the engines of the Rapides Lumber Company, which are used in hauling logs, were kept at night in a siding in the woods near its pumps; that the nearest habitation to the engine on which John J. Dyer was killed was about 400 feet away; that the duties of the said Dyer were performed at night, said duties being to attend to the engines, clean them up, build fires therein, and get them ready for the day’s run, and that while engaged in making the fire up in the engine of defendant on th.e morning of the 13th day of August, 1921, that he was shot and killed by an unknown party or parties and found dead on the engine by the engine crew when they came to go out on their run.
“(4) That the said Dyer was being paid $2 per day by the defendant company, and that the occupation at which he was engaged is an hazardous occupation within the meaning of the Workmen’s Compensation Act.”
I.
The Court of Appeal, in its opinion, says;
“It is well established by the text of the Workmen’s Compensation Act, and by numerous decisions, that, for the injured employé to recover, the accident must arise both out of and in the course of his employment.
“The statement of facts in the ease conclusively shows that the accident arose in the course of Dyer’s employment. But there is nothing in the statement of facts to show that Dyer’s death arose out of his employment.”
But again:
“It is true that the conditions under which decedent worked exposed him to easy attack. It was in the woods. He worked at night. The assassination occurred while the decedent was shut up in the locomotive, stooping over, in a position where he could himself be seen, but could not see the approach of an enemy.
“The plaintiffs contend that under the test laid down in the case of Myers v. La. Ry. & Nav. Co., 140 La. 938,[1] that plaintiffs are entitled to a judgment. That test is: Whether the nature of the employment was such that the risk from which the injury resulted was greater than for a person not engaged in the employment. ,
“We have no way of knowing that the assassin would not have shot Dyer wherever and whenever he happened to see him. We have no proof that the assassin would not have opened fire on the decedent on the street, at decedent’s home, or elsewhere. Had the decedent been at home, the assassin could have crept up to his home and shot him through the window, while making a fire in the fireplace, or when he struck a match to light a lamp. The most that can be said is that the exposed and isolated condition of decedent’s employment probably had some causal connection with his death; but that is not enough.”
II.
We think the Court of Appeal has placed too narrow a construction on the terms of the statute requiring that the accident should arise out of the employment. In the leading ease on that subject in this jurisdiction, Myers v. La. Ry. & Nav. Co., 140 La. 937, 74 South. 256, Mr. Justice Provosty made a careful review of many cases dealing with the question what accidents might be said to arise out of the employment, most of which are collected in the exhaustive note in L. R. A. 1916A, p. 41 et seq., from which he deduced the rule mentioned by the Court of Appeal, to wit:
“The test to determine whether injuries to a workman arise out of'his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.”
And the learned justice added:
“This is certainly the view that has been taken in street accidents, where relief has been allowed in certain cases and not in others.”
Now in the case before us the Court of Appeal has well reasoned that the conditions under which defendant worked (at night and in an isolated spot) exposed him to easy attack. This was the direct and necessary result of *1096 his employment; and the indisputable fact that he was thus exposed by the nature of his employment cannot be minimized by imagining that the (supposed) assassin might have attacked him even in the daylight or at his home. Common experience teaches us that crimes are more common in darkness than in light, in isolated than in frequented places. In Western Grain, etc., Co. v. Pillsbury, 173 Cal. 135, 159 Pac. 423, it was held that a night watchman, assassinated whilst on duty, was entitled to compensation; and we are told in plaintiff’s brief that the same was held in Christensen v. Ohio Building, etc., Co., reported in Ill. Ind. Bd. No. 1931, Jan. 19, 1916 (to which we have not access).
We think that where a workman is exposed to some risk manifestly necessitated by his employment he is entitled to his compensation, unless it be also manifest that he would at the time of the occurrence have been equally exposed to ,the same risk outside of his employment. And we cannot assume that a man is exposed to the same danger of attack at his own home, or in some frequented place, or in the daytime, as he would be when called by his employment to some lonesome spot and in the nighttime.
And it is a mistake to suppose, as some might, that the Workmen’s Compensation Act is a statute intended merely to abolish all the usual defenses to actions by employes against their employers under former laws. On the contrary, the statute is essentially intended to provide insurance for the employs against all the risks to which he may be exposed by his employment. .Hence the statute expressly provides that the employer shall be liable even when the injury occurs through the tort of a third person. Section 7. And it is precisely because the statute is intended to provide insurance that it does not operate ex proprio vigore, but only when employer and employs (other than public) have expressly or impliedly agreed to come under its terms (section 3); thus avoiding some fancied or real question as to the constitutionality of requiring an employer to provide insurance for his employs.
In other words, workmen’s compensation statutes are intended to take the burden of the waste of life and limb off the shoulders of workingmen and place it upon those of their employers, who in turn would distribute it amongst the consumers of the product. And in order to give such statutes the full benevolent effect intended by the lawmaker, it is essential that courts should give them a liberal interpretation. And such has been the attitude of this court from the beginning towards our own statute, as we have just had occasion to say in Lemieux v. Cousins, ante, p. 811, 98 South. 255, this day decided.
III.
Under the statute, plaintiffs are entitled to 60 per cent, of the decedent’s wages for 300 weeks.
Decree.
The judgment of the Court of Appeal and of the district court is therefore reversed; and it is now ordered that there be judgment in favor of plaintiffs Mrs. Alice Dyer and her minor children, Hazel and Leon Dyer, and against the defendant Rapides Lumber Company for the full sum of $2,160, payable $7.20 per week for 300 weeks beginning August 20, 1921, with legal interest on all overdue payments from date of maturity, and costs in all courts.
Rehearing denied by the WHOLE COURT.

 74 South. 256.