### No. 2984

### Second Circuit

---

### PICKETT, ET AL., v. SOUTHERN CARBON CO.

---

(December 21, 1927. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Master and Servant —Par. 158, 160 i.**
The allegations of petition of widow of dead employee that husband was murdered after he was called from his work by one not connected with defendant's business, do not show a cause of action under the Workmen's Compensation Act No. 20 of 1914 as amended, because there is no causal connection between deceased's employment and the injury he received which caused his death.

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. Percy Sandel, Judge.

Action by Mrs. Lida C. Pickett et al. against Southern Carbon Company.

There was judgment for defendant and plaintiffs appealed.

Judgment affirmed.

Madison & Madison, of Bastrop, attorneys for plaintiffs, appellants.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for defendant, appellee.

ODOM, J. Will Pickett, who was foreman of the defendant's carbon plant at Spyker, Louisiana, was shot to death by Frank Cox on September 23, 1925. His widow, Mrs. Lida C. Pickett, individually and as natural tutrix of her minor child, William Claude Pickett, issue of her marriage with Will Pickett, brings this suit for compensation under the Workmen's Compensation Act, No. 20 of 1914, and amendments.

Defendant filed an exception of no cause of action, which was sustained by the court, and she prosecutes this appeal.

## OPINION

In her original petition, plaintiff alleged:

"That, on the 23rd day of September, 1925, the said Will Pickett, while in the employ of the said Southern Carbon Company at their plant located at or near Spyker, Louisiana, and during the course of his employment, was injured and as a result of said injury died shortly thereafter on the same date, September 23rd, 1925."

Plaintiff did not set forth the nature and kind of work which the deceased was performing at the time he was injured, nor did she allege that the injury arose out of the employment.

Defendant filed an exception of vagueness, which was sustained by the court, but she was allowed to amend her petition "to show the manner in which William Pickett was injured and the kind of work he was performing at the time he was injured".

She amended her petition and alleged:

"That Will Pickett was in the employment of the Southern Carbon Company, at Spyker, Morehouse Parish, Louisiana, on September 23, 1925, in the capacity of superintendent of the gasoline plant.

"That on the morning of September 23, 1925, while at work in the usual course of his employment in the gasoline plant, he was informed by one Virgil Flemming, an employee, that Frank Cox, who was not an employee, desired to see him.

"That said Cox and Pickett met on the wooden platform which leads from the warehouse to the railroad, and a conversation followed; that after a few minutes of conversation the said Cox pulled a revolver from his, the said Cox's person, fired several times, each shot taking effect.

"That the said Pickett ran to the warehouse followed by the said Cox, and died within a few minutes as a result of said wounds.

"That said Pickett was not armed and the shooting occurred on the property of the Southern Carbon Company or property under their control."

After the filing of this amended petition, defendant tendered and filed an exception of no cause of action, which was sustained by the court. This appeal followed.

The exception, and the court's ruling thereon, are grounded upon the proposition that the facts alleged do not show that Will Pickett's death was due to an accident arising out of his employment.

Under the plain letter of the act (Section 2, Act No 20 of 1914, as amended by Act No. 38 of 1918), and under repeated decisions of our Supreme Court, in order that an injured employee, or his dependents, may recover compensation under the act, it must be alleged and shown that the accident causing the injury or death arose both in the course and out of the employment.

Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 So. 677.

Meyers vs. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256.

Therefore, a petition which does not allege in specific terms that the accident was one growing out of the employment, or disclose facts which show that it did, does not disclose a cause of action.

It is nowhere alleged specifically in the original or amended petition that the injury resulting in the death of Will Pickett arose out of his employment; so that unless the facts and circumstances alleged as to the manner in which he came to his death show that the accident was one growing out of the employment, it must be held that no cause of action is shown.

The facts disclosed by the amended petition are that on the morning of September 23, 1925, Pickett, who was foreman of the gasoline plant of defendant, was engaged in the discharge of his duties at the plant, and, while so engaged, was informed by an employee of the company that Frank Cox, who was not an employee, desired to see him, that Cox and Pickett met on the platform leading from the warehouse to the railroad (presumably Pickett walked out to where Cox was) and that after a few minutes conversation Cox drew a revolver and shot Pickett to death; that Pickett was not armed and that he was killed on defendant's property.

Reduced to plain and simple language, plaintiff alleges that Cox, who had no connection with defendant's business, caused Pickett to leave his work in the plant in day time, walk out in the open, and there murdered him.

In a very recent case decided by our Supreme Court, that of Conaway vs. Marine Oil Co., 162 La. 147, 110 So. 181, the court quoted approvingly the following extract from the case In Re McNicol, 215 Mass. 397, 102 N. E. 697 (L. R. A. 1916A 306):

"It (the injury) arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood."

In the leading case of Meyers vs. Louisiana Railway & Navigation Company, 140 La. 937, 74 So. 256, the organ of the court made an exhaustive review of the jurisprudence dealing with the question of what accidents may be said to arise "out of the employment" and, after doing so, announced the following rule:

"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."

The allegations of plaintiff's petition (which, of course, we accept as true) do not disclose, to our minds, that there was any causal connection between the conditions under which Pickett's work was required to be performed and the resulting injury; nor do we think the injury can be said to have followed as a natural incident of the work which he was required to perform, or that his work ex-

posed him to an extra hazard. His work did not bring him in contact with his enemy, Cox, for Cox was not employed by defendant. Pickett's work did not make him more accessible to an attack by Cox than he would have been had he not been so engaged. Cox, in broad daylight, sought Pickett, found him at work and induced him to leave his work and come out, and attacked him. He could have as easily done the same thing elsewhere or at another time. Cox was not facilitated in his attack by the nature of Pickett's employment.

It cannot, therefore, be said that Pickett's death had its origin in a risk connected with the employment and that it resulted from the source of the employment as a rational consequence.

Counsel for plaintiff cite in support of their case the cases of Dyer vs. Rapides Lumber Company, 154 La. 1091, 98 So. 677, and Ferguson vs. Cady-McFarland Gravel Company, 156 La. 871, 101 So. 248.

The facts in the Dyer case were that the defendant, a logging company, kept its engines out in the woods at night some four hundred feet away from the nearest human habitation; that the deceased's duties as an employee of defendant required that he remain with the engines at night to clean them and keep fires in the boilers so that they would be ready for the following day's run, and that while so engaged at night he was shot and killed by an unknown assassin.

In holding that the widow and other dependents of the deceased were entitled to recover, the court reasoned that the conditions under which the deceased worked, in the darkness of the night and at a spot isolated in the woods, exposed him to more easy attack by an enemy than he otherwise would have been, that his exposure was "the direct and necessary result of his employment", and the court said:

"Common experience teaches us that crimes are more common in darkness than in light, in isolated than in frequented places."

And further:

"And we cannot assume that a man is exposed to the same danger of attack at his own home, or in some frequented place, or in the daytime, as he would be when called by his employment to some lonesome spot and in the nighttime."

In the Cady-McFarland case, supra, the deceased was employed to repair a railroad track, and while at work in a stooping position was struck on the head with an iron bar and killed by a fellow employee. His dependents were allowed to recover. (See same case, Court of Appeal, not yet reported), upon the theory and ground that his employment brought him in contact with a fellow employee who was his enemy and that he would not have been so exposed if he had not ben so employed. In other words, he was exposed to an extra hazard by his employment.

The court said:

"An employee, like the decedent, who may have an enemy among his fellow employees in the same gang in which he is required to work, necessarily comes in contact with such enemy throughout all hours of the day, and is constantly exposed to assault and bodily harm. *He therefore incurs greater risk* necessitated by his employment than a person ordinarily would be subjected to outside of such employment." (Italics ours.)

The holding in these cases is grounded upon the proposition that there was a causal connection between the employment and the injury; that the nature of the employment exposed the employee to an additional risk, an extra hazard.

This point does not seem to have been stressed in the case of Dyas vs. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303, also cited by counsel, but the facts in that case were that the duties of the deceased brought him in contact with cab drivers, one of whom killed him after a dispute over the carriage of baggage. The extra hazard was his necessary contact with cab drivers.

Our attention is called to the case of Gasca vs. Texas Pipe Line Co., 2 La. App. 483, decided by us in June, 1925.

In that case an employee was killed by lightning during lunch time while taking shelter under a tree, and his dependents were allowed to recover.

In his opinion, on rehearing, the late Judge Carver, after stating that the court did not mean to hold that the statute is a general accident and life insurance provision requiring no relation between the accident and the employment beyond the fact that the deceased was on the payroll, said:

"We think the death in this case compensable, though, because, as we appreciate the law and the facts, the conditions to which Gasca's employment subjected him increased the risk from lightning and, under the authorities, we think this is sufficient causal connection between the employment and the accident."

This writer dissented in that case, because it seemed far-fetched to hold that Gasca's employment subjected him to an added or increased risk from lightning. However, assuming that it did, the holding is supported by the jurisprudence of this and other states.

Counsel cite also the case of Schexneider vs. General American Tank Car Corpora-tion, 5 La. App. 84, decided by the Orleans court on July 5, 1926.

In that case the deceased was killed by the accidental discharge of a pistol by the night watchman through "horseplay". But the court said:

"In the case now before us, Petrolia was shot by the night watchman of defendant. The revolver from which the shot was accidentally discharged was a part of the watchman's equipment and essential to his employment as a means of protecting his employer's property."

The court observed that the case was very different from the cited cases where injury resulted entirely from pranks of employees—

"without reference to any instrumentality of the employer's business".

The night watchman was an employee of the defendant and the gun was an "instrumentality of the employer's business".

The employment in that case brought the deceased and the night watchman together; hence the added risk.

In the case at bar, Cox was not an employee of defendant and Pickett's employment did not bring him in contact with Cox; nor did such employment subject him to any greater risk or peril than he would have been in if he had not been so employed. There was no causal connection between the employment and the injury. Conaway vs. Marine Oil Co., 162 La. 147, 110 So. 181.

The judgment sustaining the exception of no cause of action is correct and is affirmed with costs.