No. 2782

Second Circuit

---

### WILLIE v. LOUISIANA LONG LEAF LUMBER COMPANY, ET AL.

---

(November 6, 1928.  Rehearing Refused.)
(November 13, 1928.  Rehearing Refused and Writ of Certiorari and Review Denied by Supreme Court.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 156, 158.**
An employee who, of his own volition and in disobedience to the orders of his employer, while being transported on a

work train from his place of work to his boarding house at the close of the day's work, leaves the train while it is temporarily stopped and walks down the railroad track to converse with friends and, after the train has begun to move attempts to board it and is injured, cannot recover compensation from his employer for such injuries.

2. **Louisiana Digest—Master and Servant —Par. 158, 160 (j).**

Where the evidence shows that the cause of the employee's injury was his attempting to board a moving train in defiance of his employer's rules, thereby unnecessarily exposing himself to danger, he cannot recover compensation.

> Pierre vs. Barringer, 149 La. 71, 88 So. 691.

Appeal from the Eleventh Judicial District Court, Parish of Sabine.

Action by George Willie against Louisiana Long Leaf Lumber Co.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Fern M. Wood, of Leesville, attorney for plaintiff, appellant.

R. A. Fraser, of Many; Thornton, Gist & Richey, of Alexandria, attorneys for defendants, appellees.

## STATEMENT OF THE CASE.

REYNOLDS, J.  This is a suit to recover compensation under the Workmen's Compensation Act (Act 20 of 1914 and amendments) for an injury suffered by plaintiff in attempting to board a moving train.

Defendants deny liability on the ground that at the time of the accident plaintiff was not engaged in the performance of any work for his employer and that the accident did not arise out of or in the course of his employment, and that the injury to plaintiff resulted from his attempting to board a moving train in defiance of the rules of his employer provided for his safety and protection.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit and he has appealed.

## OPINION

The evidence shows that plaintiff was employed by defendants and was being transported from his place of work to his boarding house on a work train at the end of the work day; that the train stopped for five minutes to pass from a switch track onto the main track; that one of the workmen on the train asked the foreman of the work gang for permission for the crew to get off the train and that he told him in the hearing of plaintiff "to stay on the train" and "not to get off;" that notwithstanding these instructions plaintiff did leave the train and went down the railroad track in the direction in which the train would move about 100 yards on private business; and that after the train had resumed its journey and was in motion the plaintiff attempted to get aboard it and in doing so fell under the moving cars and was injured.

Ed. Teasley, foreman of the work gang, testified:

"Q. Did George Willie or any of the members of this steel gang, just before entering the main line ask you if they could get off the train?
"A. Yes, sir, and I told them to stay on the train; that we only had five minutes there, and not to get off.
"Q. Was George Willie there?
"A. Yes, sir.
"Q. Did he hear you?
"A. I suppose so; he was close enough to have heard it.

"Q. What did you tell them?
"A. Don't get off; we only got five minutes, and don't get off.
"Q. You had already told George Willie and the other men that it was against the rules of the company to get off?
"A. Yes, sir."

(Record, page 24.)

Jim Brown, conductor of the work train, testified:

"Q. Was this boy on the train when you got up there?
"A. Yes, sir; entire crew on there; and they wanted to get off and go up to the camp, and I told them not to go, that we had only five minutes there, and he asked me to slow up for them.
"Q. Where did Willie go?
"A. He got off and walked up the track about 100 yards. That morning he had attempted to catch a moving train, and I kicked him and pulled him off.
"Q. Did you warn him at that time?
"A. I told him dozens of times before that about catching the train.
* * *
"Q. Did you see the accident?
"A. Yes, sir.
"Q. Where were you?
"A. On the back end of the caboose; and about this time he grabbed at the hand hold, and went under the car.
"Q. Had the train got under way at that time?
"A. Not very fast; it had only gone about 100 yards.
"Q. This boy, George Willie, did he have at the time any business for the company up that track?
"A. He had no business, except in that caboose.
"Q. Had no duties to perform for the company out there?
"A. None at all."

(Record, page 29.)

Clarence Holden, one of the work crew, testified:

"Q. Did you see George Willie there?
"A. Yes, sir.
"Q. Was he working with you boys?
"A. Yes, sir.
"Q. I ask you whether or not George Willie rode the train from where you finished the spur, to the main track?
"A. Yes, sir; he was on there.
* * *
"Q. When you got to the main line and the train stopped there, did any of you talk to anybody about getting off the train?
"A. Asked Mr. Ed. Teasley if he could go up in the camp, and he said 'I haven't got but five minutes, and we've got to go; don't get off.'
"Q. Did George Willie go up there?
"A. Yes, sir; I went up the track and called him.
"Q. What did you tell him?
"A. To come on back, that he couldn't catch a train; and he looked back and went on up the track.
"Q. What did you say to him?
"A. I told him to come and get on the train, they are fixing to leave.
"Q. Did he do it?
"A. No, sir.
"Q. Did he have any work for the company up there?
"A. Not as I know of.
"Q. Did any of the boys have any work to do there at the switch?
"A. No, sir."

(Record, page 31.)

Sam Allen, another of the work crew, testified:

"Q. Did you see George there just before he got hurt?
"A. Yes, sir; he walked up the track there.
"Q. Did you talk to him?
"A. Yes, sir.
"Q. What did you tell him?
"A. I told him to go back and not try to catch that train; that he couldn't catch a train.
"Q. What did he say?
"A. He said 'no train leaves me.'
"Q. Did he stand there until the train started?
"A. Yes, sir.
"Q. Were you looking at him when he caught the train?
"A. Yes, sir.
"Q. Was he working there; doing any work for the company?
"A. Just down there talking.

"Q. Just visiting with you boys?
"A. Yes, sir."
(Record, page 34.)

Zuma Garner, another of the work crew, testified:

"Q. Did you hear anyone ask Mr. Teasley, the boss man, whether or not the boys could leave the caboose and go to the camp?
"A. Yes, sir; I heard that.
"Q. Was George Willie there?
"A. Yes, sir; all of us up there.
"Q. And what did Mr. Teasley tell you?
"A. Said we couldn't go because we only had five minutes there.
"Q. Did George hear that?
"A. He was there; he ought to have heard it.
"Q. Did George leave the train?
"A. Yes, sir.
"Q. Did anybody else go?
"A. Yes, sir.
          *  *  *
"Q. You tell George to come back?
"A. Yes, sir.
"Q. You stayed on the train?
"A. Yes, sir.
"Q. Did George come back?
"A. No, sir.
"Q. Was he doing any work for the company up there?
"A. No, sir; sitting down.
"Q. Didn't have any business up there?
"A. No, sir.
"Q. He tried to catch the train and got hurt?
"A. Yes, sir."

(Record, pages 37, 38.)

The testimony of these witnesses convinces us that plaintiff was violating rules of his employer when he left the train and went up the railroad track in pursuit of amusements; that he was not then performing any services for his employer; that the accident did not arise out of or in the course of his employment; and that the injury complained of was suffered by reason of plaintiff's deliberate failure to use an adequate safeguard and protection against the accident provided for him by his employer and in deliberately exposing himself unnecessarily to danger.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.