## FORD v. CITY OF ALEXANDRIA et al.[*]
### No. 4769.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

Polk & Robinson, of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellees.

MILLS, Judge.

Plaintiff brings this suit for the common benefit of herself and her minor children against the city of Alexandria and its insurer to recover, under the provisions of the Workmen's Compensation Act (No. 20 of 1914, as amended) $19.50 per week for 300 weeks for the death of their husband and father, Eugene Ford. Deceased met his death in the city of Alexandria on the 11th day of July, 1933, at about 3 o'clock a. m., by electrocution. At the time of the fatal accident, he was employed by the city in its street cleaning department, his particular work being the operation of a street-sweeping machine from 11 o'clock at night to 7 the next morning.

It was the general duty of all employees of the department of streets to, at any hour and any place, do whatever was required to protect the public from any dangerous condition in the streets. All of the employees had been so instructed, but had been particularly told not to touch loose live wires, but to immediately telephone headquarters to send an electrician to remove the danger.

On the morning of the accident, a severe rain and electrical storm prevented further sweeping of the streets. In accordance with the rule and custom, deceased returned his sweeper to the barn and, his particular duties being over, started, in his own private automobile, in the direction of his home. Turning into Vance street at its intersection with Lee, he ran his car into and under a broken live electric wire dangling from a pole into the street, and stopped the automobile with the wire across its top, with the end out toward the center of the street. Realizing the danger of the situation, he got out of the car without mishap, and went into a nearby filling station, where he secured from the attendant a broom and requested him to phone headquarters about the wire. As the attendant went to phone, deceased started toward his car with the broom. There being no one else present, just what happened we do not know, except that the attendant, going out to the car after delivering the message, found Ford lying dead in the street with his feet almost under the running board of the car, his head away from it, the broom stick clamped in his hand and the deadly wire across his chest between it and his arms. It seems that wood, when dry, is a nonconductor of electricity, but, when wet, loses its negative character.

The decision of the case depends largely upon what we find, as a fact, deceased did between the time he left the filling station and the time of his death. It is not shown that any car or pedestrian was approaching at that early hour, creating an emergency requiring deceased to touch this wire for the protection of the public. The automobile top had begun to smoke; the destruction of his private property was imminent. It could be saved by re-entering the car and driving off

or by removing the wire from contact with it. We are satisfied that deceased, being ignorant of, or forgetting, the action of the dampness on the conductive quality of the wood, chose the latter course as the least dangerous, and, upon touching the wire with the broom, received the electric charge into his body.

We are convinced, as was apparently the trial judge, that deceased's motive in touching the wire contrary to instructions was the salvation of his property and not the protection of the public. Under this finding of fact, can plaintiff recover? From a judgment answering this question in the negative, plaintiff has appealed.

■ Section 2 of the act (as amended by Act No. 85 of 1926) provides that compensable injury must be "by accident arising out of and in the course of" his employment.

To come under the act both conditions must be present. Kern v. Southport Mill, Ltd., 19 La. App. 338, 136 So. 225.

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 258; Crysel v. R. W. Briggs & Co. (La. App.) 146 So. 489.

"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment." Myers v. La. Ry. & Nav. Co., supra; Dyer v. Rapides Lbr. Co., 154 La. 1091, 98 So. 677.

■ Though his employment ceased when he put up his machine and started home, and though he was acting in his private capacity when he ran into the wire and created the dangerous situation, deceased again entered the course of his employment when, under his general duty, he went to the filling station to give notice of the dangerous wire. That general duty required him to remain on the scene to warn and protect the public. Had he met death while doing any of these things required by his employment, undoubtedly plaintiffs should recover in this case.

But deceased did not so meet his death. At the time of the accident he had diverged entirely from the scope of his employment, from the duty he owed the city or the public, and was engaged in the purely private venture of trying to save his automobile from the danger into which he had privately run it. He therefore did not meet his death in the course of his employment, as at the time he was not doing a duty he was employed to perform. Nor did it arise out of the employment, there being no causal connection between the injury and the work he was required to perform. Nor was the risk from which the injury resulted any greater for deceased than for a person not engaged in the employment.

We cannot see any difference between the case stated and that of any citizen who runs his car into a live wire and seeks to rescue it with a broom.

The evidence satisfies us that deceased had been particularly instructed not to touch loose, live electric wires, but, when discovered, to phone for an electrician skilled in this work and supplied with proper safety appliances. We think this fact brings this case within another line of decisions which holds that, when an employee steps aside from his work to do some dangerous act that he has been warned against and forbidden to do and is injured, he cannot recover compensation. Pierre v. Barringer, 149 La. 71, 88 So. 691; Willie v. La. Long Leaf Lbr. Co., 8 La. App. 817; Gooding v. Beauregard Laundry Co., Inc., 9 La. App. 392, 120 So. 507; Webre v. Caire & Graugnard, 10 La. App. 775, 123 So. 168; Lawhorn v. A. W. Pettigrew, Inc., 12 La. App. 455, 125 So. 298; Jones v. Wyatt Lbr. Co., 18 La. App. 79, 137 So. 635.

The case at bar does not come within the reasoning of Sears v. Peytral, 151 La. 971, 92 So. 561, where the injured employee disobeyed instructions as to how he should do what he was directly employed to do.

We find the judgment of the lower court correct, and it is affirmed.