### FRANCIS WILLIAMS *vs.* THOMAS J. COGGESHALL.

A certificate of a discharge under the insolvent laws of this commonwealth need not contain a statement of an exemption of the fiduciary debts of the debtor under *St.*1844, *c.* 178, § 3, if no such debts existed.

An omission by an insolvent debtor of a large proportion of his creditors from the schedule furnished the messenger under *St.* 1838, *c.* 163, § 6, and *St.* 1848, *c.* 304, § 8, and a failure to state the residence of those creditors actually on the schedule, as also the nature and amount of their debts, or the consideration or security for the same, if not done wilfully and fraudulently, will not of itself avoid a discharge.

A mortgage given to secure borrowed money, made at the time of the loan, will not avoid a discharge in insolvency under *St.* 1844, *c.* 178, § 8.

Under *St.* 1848, *c.* 304, § 9, a discharge may be granted within less than six months from the date of the assignment.

ASSUMPSIT on a promissory note for $2000, dated July 1st, 1848. The only defence was a discharge in insolvency to which the plaintiff filed specifications of avoidance. At the trial in this court, before *Bigelow*, J. after the note was read, the defendant produced and read the certificate of his discharge. The plaintiff contended that said discharge was invalid, because it contained no statement that the fiduciary debts of the debtor were exempted from its operation under *St.* 1844, *c.* 178, § 3. The court, for the purposes of the trial, overruled the objection, reserving the question for the consideration of the whole court.

The plaintiff then offered the records of the proceedings in insolvency, by which it appeared that the schedule of creditors, containing seventy-five names, was not produced until the adjournment of the first meeting, and after the assignee was chosen. The messenger in the case testified that said schedule was never delivered to him, but that the debtor did, within three days after the date of the warrant, give him a list of creditors, containing the names of about twenty creditors, but on cross-examination he said he could not swear there were not forty names, but it was on a small piece of paper, and it did not state the residence of said creditors, nor the nature or amount of their debts, nor the consideration or security for the same; but he testified that on applying to the debtor, he gave him verbally the residence of said creditors. The court submitted to the jury the question whether such omission to furnish a suitable schedule was wilful or fraudulent on the part of the debtor, (who returned a verdict on this point for the defendant,) and reserved the question whether the fact of such omission would of itself avoid the discharge for the whole court.

To support his specifications of avoidance to the discharge, the plaintiff offered evidence tending to prove that the debtor within three months before filing the petition by him, and

when insolvent, and having reasonable and sufficient cause to believe himself so, did borrow $1000, and at the same time, and as part of the same transaction did secure said borrowed money by a mortgage of personal property. The court ruled for the purposes of the trial that this, if proved, would not avoid the discharge under *St.* 1844, *c.* 178, § 8, and reserved the question for the whole court.

The assignment of said Coggeshall's estate was made and dated May 25th, 1850; the third meeting was held, and the discharge made and granted November 23d, 1850, and the third meeting was then adjourned to April 5th, 1851. The plaintiff contended that the discharge was granted too soon, and therefore void, but the court, for the purposes of the trial, ruled otherwise.

The verdict was for the defendant, which is to be affirmed or set aside, according to the opinion of the whole court upon the questions here reserved.

*E. H. Bennett,* (*N. Morton* with him,) for the plaintiff.

1. The discharge relied on was invalid, because it discharges the insolvent from " all his debts." It ought to exempt his fiduciary debts. *St.* 1844, *c.* 178, § 3.

2. The discharge was invalid, because no schedule of creditors was furnished the messenger, as the law requires. *St.* 1848, *c.* 304, § 8; *St.* 1838, *c.* 163, § 6. Non-compliance with the provisions of the statute is fatal, although not done fraudulently. *Wedge, Ex parte,* 10 Law Rep. 117; *Perry Manufacturing Co.* v. *Brown,* 10 Law Rep. 264; *Cox* v. *Austin,* ante, 32; *Sanderson* v. *Taylor,* 1 Cush. 87; *Williams* v. *Robinson,* 4 Cush. 529; *Crocker* v. *Stone,* 7 Cush. 341. The English decisions show how strictly they require compliance with the provisions of their insolvent laws. *Hoyles* v. *Blore,* 14 Mees. & Welsb. 387; *Pugh* v. *Hookham,* 5 Car. &. P. 376; *Lambert* v. *Smith,* 11 Common Bench Rep. 358. The omission of so many names and all other particulars from the list must have been wilful. From that fact, the law would declare it fraudulent. It was not necessary for the jury to find the fraud as a distinct fact. Shaw, C. J. in 8 Met. 76; *Hoyles* v. *Blore,* supra.

3. The securing of $1,000 borrowed money, would invalidate the discharge. *St.* 1844, *c.* 178, § 8. Such security need not be for pre-borrowed money.

4. The discharge was granted too soon. Creditors ought to have the whole of the third meeting in which to show cause against granting the discharge. *St.* 1844, *c.* 304, § 9; *St.* 1838, *c.* 163, § 15; *Rice* v. *Wallace,* 7 Met. 433.

*W. Brigham,* for the defendant.

Thomas, J. The questions raised by the report are upon the validity of the defendant's discharge in insolvency.

1. The first objection to the certificate of discharge is, that it contains no statement that the fiduciary debts of the insolvent are exempted from its operation, under the *St.* of 1844, *c.* 178, § 3. It does not appear that any fiduciary debts were proved against the estate, or in fact existed. The statute requires that the certificate shall contain a statement of the debts created by the debtor's defalcation as a public officer, executor, administrator, guardian, receiver, trustee, or assignee of an insolvent estate so exempted from such discharge. Without such debts it would be difficult to make such statement. The law does not require the recital of the provisions of the statute in the certificate.

2. The second objection goes not to the form of the certificate, but to the validity of the discharge itself, on the ground that the insolvent debtor failed to furnish such schedule of his creditors to the messenger as the law requires. *St.* 1838, *c.* 163, §§ 6, 7; *St.* 1848, *c.* 104, § 8. A schedule was filed at the adjournment of the first meeting, and after the choice of the assignee. The messenger also received from the debtor, within three days after the date of the warrant, a list, containing the names of about twenty creditors, the messenger would not swear there were not forty. On applying to the debtor he gave him verbally the residence of the creditors, but the list furnished did not give the residence of the creditors nor the nature or amount of their debts, nor the consideration or security for the same. The jury found that the omission of the debtor was not fraudulent or wilful. Although the law requires a schedule of creditors to be delivered to the

messenger, it permits the insolvent to amend it and correct any mistakes therein at the second meeting. It is at the second meeting also that the schedule is to be sworn to, the oath being that it is in all respects just and true, according to his best knowledge and belief. *St.* of 1838, *c.* 163, § 7.

No precise rule can be given to determine what constitutes a schedule within the provisions of the statutes; but it is clear, from the provisions last cited, that absolute accuracy is not required. The power to amend, and the form of the oath, both show this. Nor would absolute accuracy be practically attainable. The residence of creditors is constantly changing, and what is more, human memory is imperfect, and especially so at times of distress and embarrassment. Though the point is not free from difficulty, yet a list having been given to the messenger, though imperfect, and the jury having found that the omissions were not fraudulent or wilful, we think there was not such a failure to comply with the statute as avoids the discharge. The case of *Burnside* v. *Brigham*, 8 Met. 75, determined under a similar provision of the bankrupt law of the United States, is perhaps a stronger case than this, inasmuch as the plaintiff in that suit was a creditor, whose name was omitted from the schedule, and failed to receive notice, in consequence of such omission. Yet this court held that to avoid the discharge, the plaintiff must show the omission was wilful and fraudulent.

3. The third objection to the discharge is, that the debtor, within three months before filing his petition, being insolvent, and having reasonable and sufficient ground to believe himself insolvent, borrowed $1,000, and as part of the same transaction secured the same by a mortgage of personal property. This objection is founded upon the *St.* 1844, *c.* 178, § 8, which is as follows: " No discharge of any debtor under this act and the aforementioned acts, or any of them, shall be granted or valid, if the debtor hereafter, when insolvent, shall, within one year next before filing of the petition, by or against him, pay or secure, either directly or indirectly, in whole or in part, any borrowed money or preëxisting debt, or any liability of his or for him, if the creditor proves that at

the time of making said payment, or giving said security, the debtor had reasonable and sufficient cause to believe himself insolvent." There can be little doubt, we think, as to the construction of this section, whether we look to the purpose to be accomplished or the language used.

The evident object of the statute is, to prevent preferences among creditors; to secure, when a debtor has not enough to pay his debts in full, an equal distribution of what he has. It forbids, therefore, the payment of one creditor, because it prevents such equal distribution; such is not the effect of a sale of property, for an adequate consideration, or the borrowing of money and giving security therefor, in good faith and with no intent to defraud. These acts do not diminish the fund to be distributed, or create inequality.

The language of the statute is, "no discharge shall be granted or valid, &c. if the debtor, &c. shall pay or secure, either directly or indirectly, in whole or in part, any borrowed money or preëxisting debt, or any liability of his or for him." Upon the familiar rule of *noscitur a sociis*, there would seem to be no reasonable doubt of the meaning of the words "borrowed money," and that this has reference to past transactions. The language is inapplicable to a transaction where the acts of borrowing and securing are simultaneous. The word "payment" of course refers to money borrowed before, and not at the time of payment.

4. The last objection to the discharge is, that it was granted within six months after the date of the assignment. Since the hearing of this case at *nisi prius* this court has decided that under the *St.* 1848, *c.* 304, § 9, a discharge may well be granted, though six months have not elapsed. See *Journeay* v. *Gardner*, ante, 355.