## No. 2692

## Second Circuit

---

## FLOWERS v. WILLIAMS-RIEVES LUMBER COMPANY

---

(June 30, 1926, Opinion and Decree.)
(Oct. 4, 1926, Rehearing Refused.)
(Nov. 3, 1926 Writs of Certiorari and Review Denied by Supreme Court.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 154.**

In view of Article 14 of the Civil Code dizzy sickening effects of tobacco is not "intoxication" as meant by Section 28 of Subsection 1 of Act No. 20 of 1914 as amended by Act 38 of 1918.

2. **Louisiana Digest—Master and Servant —Par. 158.**

An injured employee, who after taking a chew of tobacco becomes dizzy, fainted and fell off of the truck causing an injury to his head, was injured in the course of and arising out of his employment, and can recover under the Workmen's Compensation Act No. 20 of 1914.

3. **Louisiana Digest—Master and Servant —Par. 154.**

Section 8 Subsection 1 (e) of the Workmen's Compensation Act No. 20 of 1914 does not apply to injuries producing disability to work.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926. Editor's note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by Robert M. Flowers, Tutor, against Williams-Rieves Lumber Company. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Vernis Morgan, of Shreveport, attorney for plaintiff, appellee.

Wilkinson, Lewis and Wilkinson, attorneys for defendant, appellant.

ODOM, J. This is a suit under the Workmen's Compensation Act (Act 20 of 1914 and amendments).

Homer Flowers was employed by defendant to work about a sawmill. On the day he was injured he was told by the proprietor of the mill to assist a truck driver in transporting lumber. After delivering a load of lumber he and the driver got on the truck to return to the mill and while on their way the driver gave him a chew of tobacco which made him sick or rendered him unconscious so that he fell from the truck to the paved road and sustained the injury of which he complains. He testified that he had no recollection of becoming sick from the effects of the tobacco but in a signed statement made by him to a representative of the insurance company he said the driver of the truck—

"* * * gave me a chew of tobacco and as I was not accustomed to chewing tobacco, it made me very dizzy and finally I

fainted and fell off of the truck and hit my head on the asphalt pavement".

Homer Flowers, as a witness in his own behalf on the trial of the case, in a measure repudiated this statement, but said that after chewing the tobacco he became unconscious and did not know what happened and that when he regained consciousness he was in a sanitarium.

Whether he was accustomed to the use of tobacco or not is not clear; but we think that makes no difference. The testimony makes it clear, we think, that it was the effects of the tobacco which caused him to fall from the truck. He suggests that he may have fallen on account of a jolt or jar, but there is no testimony to support that theory.

The defense is, to quote from defendant's brief:

"First, that the accident did not arise out of or in the course of the employment; second, that the employee was intoxicated at the time of the injury."

In oral argument before the court and in brief counsel contend that the injury was caused by Homer Flowers' intoxication.

We shall consider those defenses in reverse order, because there will be no necessity for discussing the first point if the injury was caused by the employee's intoxication.

Subsection 1 of section 28 of Act 20 of 1914, as amended by Act 38 of 1918, provides:

"* * * no compensation shall be allowed for an injury caused * * * by the injured employee's intoxication at the time of the injury.* * *"

Counsel for defendant contend, and in that view we concur, that it was the effects of the tobacco which caused Homer Flowers to fall from the truck.

They further contend that tobacco is an intoxicant and that he was intoxicated at the time he fell, as contemplated under the statute.

In that view we do not concur.

In construing this statute courts should not be too technical and should interpret the meaning of words and terms found therein as they are ordinarily understood.

It may be technically true, as contended by defendant's counsel, that a person is "intoxicated" when under the influence of a drug, but it would be going too far to say that the dizzy, sickening effects of tobacco is "intoxication" as is meant under the statute.

It is a well known fact that the use of tobacco sometimes causes dizziness to such an extent that the user falls and that it sometimes causes one to become sick and lose consciousness. But that is not "intoxication" as we ordinarily understand and accept that term.

"Intoxication", according to 23 Cyc. 344, is a—

"* * * synonym of 'inebriety' or 'drunkenness' implied or evidenced by undue or abnormal excitation of the passions or feelings or the impairment of the capacity to think and act correctly and effectively."

The effect of tobacco is not to produce excitation of the passions or feelings or impairment of the capacity to think, but rather to cause sickness and dizziness, and, in extreme cases, unconsciousness.

We find that courts of other states have had occasion to construe the meaning of the word "intoxicated" or "intoxication" as they appear in their statutes.

In the state of Georgia there is a statute providing that either spouse may be granted a divorce in case the other is guilty of habitual intoxication, and in the case of Ring vs. Ring, 112 Ga. 854, (s8 S. E. 330) the court held that "intoxication" under that statute means drunkenness produced by the use of intoxicating liquor, and not the condition resulting from the excessive use of opiates.

Vermont has a penal statute which provides that persons found intoxicated may be punished, and in the case of State vs. Kelley, 47 Vt. 294, the Supreme Court of that state held that the word "intoxicated" is used in its common and ordinary signification and means intoxicated on spirituous liquor; and, in commenting, the court said: that it is sometimes contended that a person is intoxicated or drunk with opium, ether or laughing gas, but that it is always felt and understood that such is an unusual and forced use of the word "intoxicated".

In the case of Commonwealth vs. Whitney, 65 Mass. 447, the court held that the word "intoxication" is merely synonymous with inebriety and is expressive of that state or condition which follows from the taking into the body by swallowing or drinking intoxicating liquors.

In the case of Youngs vs. Young, decided by the Supreme Court of Illinois and reported in 22 N. E. 806 (130 Ill. 230) the plaintiff brought suit for divorce under a statute of that state which makes it a cause for divorce that the husband or wife—

"* * * has been guilty of habitual drunkenness for the space of two years"

and the court said.

"* * * the evidence fails to show that defendant has ever been in the habit of drinking intoxicating liquors, at least to excess; but it is claimed, and the evidence of the complainant tends to show, that for several years prior to the time complainant left him defendant had been in the habit of using morphine by hypodermic injection into the arm and leg. It appears that the effects of morphine thus administered are very similar to and in many respects apparently identical with those produced by the use of intoxicating liquors. This branch of the case, therefore, must rest upon the proof of defendant's indulgence in the morphine habit and must necessarily fall unless it can be held that the intoxication and stupor produced by the use of morphine is 'drunkenness' within the meaning of the first section of the statute in relation to divorce. It cannot be doubted, we think, that the word 'drunkenness' is used in said statute in its ordinary and popular sense. The primary signification of the word as given in Webster is the state of being drunk or overpowered by alcoholic liquor; intoxication; inebriety."

In Bouvier's Law Dictionary it is defined as—

"The condition of a man whose mind is affected by the immoderate use of intoxicating drinks."

A similar definition is given by Rapalje and Lawrence in their law dictionary, to-wit:

"Disorder of the mind occasioned by the recent use of intoxicating liquor."

The Supreme Judicial Court of Massachusetts in defining the meaning of the word as used in a statute of that state said:

"There can be no doubt that drunkenness as it is commonly understood in the community is the result of the excessive drinking of intoxicating liquors. Such is also the signification given to it by lexicographers."

A note to the above case found in 6 L. R. A. 548 reads:

"To constitute grounds for divorce for habitual drunkenness, the drunkenness

must be the effect of the use of alcoholic liquors and not of opiates, chloroform or other drugs."

Citing 1 Bishop Mar. & Div. 627; Barber vs. Barber, 14 Law. Rep. 375.

We find that in many of the states, notably North Dakota, Oklahoma and Colorado, where there are statutes providing for the treatment and cure of drunkards or inebriates, that the term "drunkard" has been held to include persons who have acquired the habit of using liquors, drugs or narcotics to such an extent as to deprive them of self control; but aside from statutes of this nature we find that courts have uniformly held that "intoxication" as used in the statute means a condition produced by the use of intoxicating liquor and not by drugs or narcotics.

We are referred to the definition of "intoxicated" as given in Webster's New International Dictionary as follows:

"Under the influence of intoxicating liquors or drugs."

And counsel argue that tobacco is a drug and therefore one who is under the influence of tobacco is in a state of "intoxication" as used in the workmen's compensation statute now under consideration.

We find the definition above referred to includes also the condition of being—

"* * * emotionally wrought up as by sorrow or joy".

Counsel would not argue, we think, that the word "intoxication" as used in the statute should be so technically construed as to mean one who is emotionally wrought up as by sorrow or joy.

By this same authority we find that the word "intoxication" means a state of being intoxicated or drunk; drunkenness; the act of intoxicating or making drunk.

Referring to the word "drunk" in the same dictionary, we find it defined as follows:

"Intoxicated with or as with strong drink; under the influence of an intoxicant, especially an alcoholic liquor so that the use of the faculties is materially impaired."

The same authority defines "drunkard" as—

"One who habitually drinks strong liquors immoderately; one whose habit is to get drunk; a toper; a sot."

The word "drunken" is defined as—

"Overcome by strong drink; intoxicated by spirituous liquor."

It will therefore appear that the authority cited by counsel is against them.

Civil Code, Article 14, reads:

"The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."

The word "intoxication" as it is ordinarily used and understood, means a condition produced by the excessive use of alcoholic liquors.

Our holding, therefore, is, that the injured employee was not intoxicated at the time of the accident.

On the first point, we note that counsel, in brief, say that Homer Flowers' injury occurred in the course of his employment "but did not arise out of and incidental to his employment".

This contention, as we understand it, is based upon the proposition that the use of the tobacco caused him to fall from the truck.

The use of the tobacco did not arise out of the employment, nor is it incidental

thereto. But the use of the tobacco did not produce the injury. It was the fall from the truck which caused the injury. Defendant was not responsible for Homer Flowers' use of the tobacco but defendant did place him on the truck from which he fell and it was the fall which caused the injury. He would no doubt have become sick and unconscious from the effects of the tobacco if he had been on the ground walking, but it is not likely that he would have been hurt. By assigning him work which made it necessary for him to ride the truck defendant placed him in a place of danger and exposed him to an extra or added hazard. It was the employment which exposed him to this hazard.

In the case of Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 South. 677, the court said:

"We think that where a workman is exposed to some risk manifestly necessitated by his employment he is entitled to his compensation, unless it also be manifest that he would at the time of the occurrence have been equally exposed to the same risk outside of his employment. And we cannot assume that a man is exposed to the same danger of attack at his own home, or in some frequented place, or in the day time, as he would be when called by his employment to some lonesome spot and in the night time."

In that case the employer kept its engines in the night time in a siding in the woods, and while engaged during the night in looking after those engines the employee was assassinated, and the representatives of the employee were allowed recovery upon the theory that the employment, requiring work in the woods at night, exposed the employee to a hazard or risk to which he would not have been otherwise exposed.

In the case of Ferguson vs. Cady-McFarland Gravel Co., 156 La. 871, 101 South.

248, the employee, while at work repairing a railroad track, was struck on the head with an iron bar in the hands of a fellow employee and killed, and the court held that the accident "arose out of and in the course of the employment"; citing the Dyer case, supra, where the court quoted, approvingly, the following rule deduced in the case of Myers vs. La. Ry. & Nav. Co., 140 La. 937, 74 South. 256, to-wit:

"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."

The agency which caused the death in the Dyer case and in the Cady-McFarland case, supra, was the assassin, but recovery was allowed because, as was said in the latter case, the employee "therefore incurs greater risk necessitated by his employment than a person ordinarily would be subjected to outside of such employment".

So, in the case at bar, the use of the tobacco was the agency which caused the employee to become unconscious and fall and it was the fall from the truck which caused the injury, and we cannot assume that he would have been injured if he had not been on the truck.

The same principle is applied in the so-called "street" cases and in cases where the injury or death is due to the elements.

In an exhaustive case note found in 13 A. L. R. 974, the annotator after stating that as a general rule injuries caused by the elements do not arise out of the employment, says further:

"The rule is generally recognized, however, that if an employee, by reason of his

duties, is exposed to a special or peculiar danger from the elements, that is, one greater than other persons in the community are, and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment within the meaning of the workmen's compensation acts."

And many cases are cited in support of the text.  See also: 8 A. L. R. 935;

23 A. L. R. 348;

23 A. L. R. 403.

Counsel for defendant have industriously collated a vast array of authorities which they cite in support of their argument. Some of them are in direct conflict with the view which we take, notably, the case of Van Gerder vs. Packard Motor Car Co., 195 Mich. 588, reported in L. T. A. 1917E 522 and 162 N. W. 177.

In that case it was held that an employee who while at work on a scaffold fell to the ground on account of an epileptic fit could not recover because the fall was caused by the fit.

On the other hand, we find other cases where recovery was allowed by other courts on facts almost identical.

See note in 37 A. L. R. 771.

Some of the cases cited by counsel for defendant are not in point.  For instance, in the British case recovery was denied where a messenger while carrying a message fainted and fell in the street, causing his death.  That injury was not due to a street hazard, and therefore the case has no application.

In another case, the decedent fell to the ground in a swoon while at work.  It is not suggested that he would not have fallen and been killed if he had not been at work

or that the nature of the work or the place furnished him to work contributed in any manner to the accident.

Some of the cases cited support our theory, as for instance, the case where an engineer was tightening a nut and fainted and fell.  The court held that the accident was due to the work and allowed recovery.

See also:  Carroll vs. What Cheer Stables Co., 38 R. I. 421; L. R. A. 1916D, 154.

In the case of Cinmino vs. Rubber Co., reported in 37 A. L. R. 769, another case cited by counsel for defendant, the deceased while standing on a concrete floor near a bench waiting for stock to carry to an employee, made an outcry and fell to the floor, fracturing his skull, from which injury he died.  The court held that the injury which resulted from the impact of his head with the floor was not a risk or hazard of the employment.

That case does not support counsel's theory.

In the case at bar, there is no reason to assume that plaintiff would have been injured if he had been not on the truck. The injury, therefore, is traceable directly to the employment, and under the holdings in the cases of Dyer vs. Rapides Lumber Co., and Ferguson vs. Cady-McFarland Gravel Co., 156 La. 871, 101 South. 248, supra, and Sears vs. Petral, 151 La. 971, 92 South. 561, plaintiff is entitled to recover.

Plaintiff moved in this court to amend the judgment so as to allow an additional amount under clause (e) of subsection 1 of section 8 of the act.

It is settled jurisprudence that clause (e) of subsection 1 of section 8 of the statute does not apply to injuries producing disability to work.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.