No. 12,972.

JOHN C. MUNDAY VS. J. A. LANDRY ET AL.

SYLLABUS.   .

ON APPLICATION TO REMAND.

Affidavits of witnesses for defendants and counter affidavits of witnesses for plaintiff regarding the extent of injury suffered in a case of assault and battery, do not present grounds to set aside the verdict and remand the case.

ON THE MERITS.

The principal defendant sought reparation from plaintiff and in this he was joined by his co-defendant.

An asserted insulting letter was received a few hours before the difficulty occurred.

There was not in the letter under the law, cause for an assault and battery, such as the jury found was committed.

Words written or spoken some time prior will not justify a physical attack upon the one by whom they were written or spoken.

The law has never gone further than to permit mere provocation to be shown as a palliation for the acts and result of anger.

The legal phrase is: in mitigation, not in justification.

The jury must have found ground to mitigate damages, but not enough to justify the act.    A conclusion affirmed by the court.

Munday vs. Landry.

Woids written from one or spoken by him will not justify a physical attack.

As words never constitute an assault, says Mr. Cooley in his work on Torts, p. 67, neither will they justify the employment of force in protection against them, however gross or abusive they may be.

The preponderance of the testimony sustains the verdict of the jury on this point, fixing the assault and battery upon the defendants.

The jury saw and heard the witnesses.

To the decision of that body as relates to mere facts, weight is always given.

It being a fact, established as we think by the testimony that defendants were the aggressors in the difficulty at plaintiff's office, the rule to which we have just referred, applies.

The next matter in hand for our determination, is the amount of the damages.

It is a general rule, that great provocation may be shown when it immediately precedes the act and the aggressor is smarting under the provocation.

The jury must have concluded that there were some mitigating circumstances which justified them in assessing the damages.

Under the rules of law app'ying, in our judgment, the defendants were liable for some damages. The jury have fixed them at fifteen hundred dollars. We have not found error that would justify us in reducing the amount, nor are we induced under the circumstances to increase the amount.

ON APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Read, J.*

*Andrews & Hakenyos* and *Kleinpeter & Kleinpeter* for Plaintiff and Appellant.

*Pujo & Moss* for Defendants and Appellants.

Argued and submitted December 21, 1898.

Opinion handed down January 9, 1899.

Judgment amended and Rehearing refused February 8, 1899.

The opinion of the court was delivered by

BREAUX, J. This was an action brought to recover an amount of fifty thousand dollars from the defendants, for injuries inflicted by one of the defendants aided by his co-defendant.

The facts are, as developed by the record, that in September, 1897, plaintiff addressed a note to one of the defendants, J. A. Landry, requesting the latter to let the writer know in regard to two amounts, (one of $600 and the other of $300), owed, the writer stated in the let-

ter to the firm of Munday and Landry; lost, plaintiff wrote in the letter, in gambling by J. A. Landry, about twenty years prior.

The business of the firm of Munday and Landry was, we judge, not considerable. The partnership was dissolved after two years of its existence. The defendant, J. A. Landry, retiring, and receiving for his interest the small amount of seventy-five dollars.

Its capital had always been quite limited.

At the time this defendant withdrew from the business and received the amount just stated, nothing was said by plaintiff about any failure of the defendant to charge up the amounts referred to in his note (addressed to J. A. Landry as just stated), which the defendant claimed should have been charged by Landry on the books, nor was there the least allusion made to any such loss during the many years that followed.

Plaintiff and the defendant were on good terms, and the former rendered services as physician to members of defendant's (J. A. Landry's) family.

It appears that this defendant obtained a judgment for a small amount which nettled plaintiff and moved him to write the letter which the defendant construed as intending to charge him with having embezzled from the old firm, to that amount.

The defendant to whom plaintiff's note had been addressed, wrote a letter in answer to the note; he also wrote a retraction, or denial of the charge, to be signed by plaintiff, i. e., which he intended to present to the plaintiff for his signature.

He disclosed to his brother the cause of the trouble—declared to him that plaintiff's note contained an untruth.

It is evident that he was greatly aroused by the tenor of the note, which he took as an imputation upon his name.

About five hours after the note of the plaintiff had been received, the defendants repaired to plaintiff's office, and there they announced to him that they desired to see him and upon his invitation, they left the sidewalk and walked into the office.

After entering, one of the brothers shut the front door and stood against it. Plaintiff walked to a partition door and there took a pistol and placed it in one of his pockets.

From this point in the history of the case, the testimony of the witnesses is contradictory and conflicting.

18

We do not deem it necessary to insert here comments touching every detail which led to the reading of the letter, which one of the defendants had written to the plaintiff.

The defendant's account is, that he said to plaintiff: "Did you write me a letter?" to which plaintiff replied "Yes."

Further: "Is this the letter you wrote me?" showing him the letter. Plaintiff replied "yes," and he then said to him: "Dr. Munday, do me the justice to tell Dan that it is false;" that he (Munday) made no reply, whereupon he said: "You have asked me for an answer and I have brought it," referring to the letter he had written to plaintiff after he had received plaintiff's note.

Plaintiff took the letter handed to him in his hands, and talked, instead of reading, whereupon defendant testified, that he took it back and read it to him.

The letter shows that the defendant, by whom it was written must have been greatly excited while writing it.

It alludes to the twenty intervening years; from the time of the dissolution of their partnership; to the date of the offensive letter; recalls facts to prove the fallacy of the charge, and ends by using words fiercely denouncing plaintiff.

While defendant was reading the letter to plaintiff, defendant's brother said to him that plaintiff's son was knocking at the door. "Admit him," was in substance, defendant's answer, (J. A. Landry). After the letter had been read, he a second time sought to get plaintiff to recall what he had written. Upon his refusal he took out the "lie bill," (that was the title or heading of the retraction he had written,) put in on the desk and said: "Dr. Munday, you must sign this for me, or make me some reparation." He (Munday) refused. Plaintiff pulled out his pistol and was prevented by defendant from using it.

A tussle followed; blows were struck ,and towards the end of the encounter the defendant, J. A. Landry, pulled out a cowhide which he had on his person concealed, and struck him four or five blows with it.

The testimony for plaintiff is, in certain particulars different. There was no attempt made, as we read it, to induce plaintiff by means at all mild or friendly to have recalled the tenor of the note of which one of the defendants (D. A. Landry) complained; but without much talk or delay, the defendant seized the letter, read it, and called upon the plaintiff to sign the recanting card, which contained expressions greatly humiliating to plaintiff had he signed it.

Plaintiff would not sign, blows followed, which must prove a permanent injury to plaintiff, the witnesses for plaintiff testify.

Defendant having made a motion to remand the case, we insert here a statement of the needful facts to a decision touching that issue.

The suit was tried in May, 1898.

It appears that defendant contended in the District Court, that plaintiff had not sustained any injury; that he remained at home secluded and feigned to be sick, in order to excite public sympathy, and make better the opportunity for recovering damages.

Three experts were appointed on defendant's motion, to examine into his physical condition—the examination was read to the jury.

Plaintiff's testimony was taken at his residence, contradictorily with defendants.

The mental and physical health of plaintiff presented an issue it is contended, and the reports of the experts, defendants assert, must have influenced the minds of the jury prejudicially to the defendants.

That they were prejudiced by it because (defendants insist) it was erroneous, to the extent it was stated that plaintiff suffered with a fracture of the occipital bone, causing a compression of the brain.

Lately, two of the experts, for reasons stated, have arrived at a different conclusion, and now certify substantially that they of late (since the trial) from personal observation, have had the opportunity to discover the error complained of; that the defendant's physical health is apparently better than it has been for years, and that it is very doubtful that any injury was ever inflicted on his brain.

This affidavit is met by counter-affidavit of a number of physicians, two of whom are physicians of great experience in treating diseases of the nervous system, who testify that after examination, they found plaintiff suffering from Neurasthenia, or nervous exhaustion, the result, they asserted, in their affidavit, of the shock to his "nervous system from cranial and other injuries sustained on or about September 14, 1897," the date of the trouble.

The jury found a verdict for plaintiff in the sum of fifteen hundred dollars. From the verdict and judgment, each plaintiff and defendants appealed.

MOTION TO REMAND.

With reference to remanding, we do not think that the verdict

should be annulled and the case remanded in order to enable the defendants to reopen the note of evidence that they may introduce evidence to prove that the returns of the experts appointed upon motion of defendants erred in stating in their reports as experts, that plaintiff's skull had been fractured.

A number of witnesses have testified in the case; letters have been introduced in evidence, the attending physicians have testified as to the condition of the plaintiff.

We find no reason in law and jurisprudence that would justify us in setting aside the verdict and remanding the case on the affidavit stated. We are referred to the case of Schneider vs. Life Insurance Co., 30th Ann. 1198. The plaintiff in that case sought to recover on a policy of insurance issued in favor of her husband.

The Supreme Court on the showing made on appeal, had reasons to believe that the husband was not dead, and remanded the case to enable the defendant to prove the one fact, which if true, disposed of the case.

Here, it is different; defendants seek to have a case remanded upon affidavits as to facts that can not have a controlling effect upon the result.

The charge of "feigning" is not absolutely a new issue on appeal. The defendants did not succeed in proving it on the trial. Affidavits and counter-affidavits offer no good ground to remand the case to inquire further into the matter.

The errors we are to consider on appeal are, those of the court or jury.

In our view, the maxim applies here: "It concerns the State that there be an end to law suits."

The case can not be remanded consistently with practice and precedents.

The motion to remand is denied.

### DAMAGES VEL NON.

The question of damages is next in order before us for determination.

The defendants severed in their defense; each filing an answer.

We do not think, in view of the facts of this case, that we should consider the defense separately.

Munday vs. Landry.

In our judgment, the two defendants had combined together in pursuit of a common purpose.

From all appearances, the brother (Dan Landry), who was called in by J. A. Landry, the principal defendant, after the receipt of plaintiff's letter, entered into the feelings of J. A. Landry.

He also was armed, stood by, and prevented interference of any sort.

He (Dan Landry), we have seen, shut the door after entering plaintiff's office and enjoined in emphatic words those on the outside not to come in, except plaintiff's son, who was permitted to come into the office after J. A. Landry had expressed his willingness to let him enter the office.

The court has not found it possible, in view of all the facts connected with the case, to conclude, that in law he is to be held as not having taken any part in the difficulty.

He knew of the letter which had greatly excited his brother; they left together, armed; called on plaintiff together, and during the difficulty, he took an active part in disarming the antagonist of his brother, and in preventing the approach of any one.

Blows were struck by the brother (J. A. Landry) with the pistol and the whip after D. Landry's interference in the difficulty and active support.

We pass to the question of liability, more particularly of the active defendant in the case.

It was ill advised on the part of plaintiff to send such a letter to the defendant, J. A. Landry, the day that a judgment recovered by him was recorded against him, the plaintiff, for a small amount.

It could serve no useful purpose, and could but excite ill-feeling.

In this case no question but that great resentment was felt by the principal defendant, and that when he called on plaintiff, he was greatly smarting under what he construed as an insult.

It is unfortunate for the defendant (J. A. Landry) that he did not control his temper and rely more upon the good name he bore in the community in which he had lived many years, as testified to by witnesses, and where he has filled satisfactorily positions of trust and confidence.

This defendant sought to compel redress in a manner which the law does not, for a moment, sanction.

The duty is imposed upon us of applying its well recognized principles.

It is well settled that words do not constitute a legal excuse for an assault and battery.

Goldsmith vs. Joy, 4th Law. An. Reports, page 500.

The law abhors the use of force either for attack or defence, and never permits its use unnecessarily.

Howland vs. Day, 56 Vt. 318, approvingly referred to in the well considered case just cited.

These principles are binding on the courts.

For reasons assigned, it is ordered, adjudged and decreed that the verdict and judgment appealed from be affirmed.

NICHOLLS, C. J., absent.

### ON APPLICATION FOR A REHEARING.

BREAUX, J. As costs must follow judgment, we affirmed the judgment as usual without making reference to costs.

It happens in this case on appeal, that both are appellants and both are appellees (plaintiff and defendants).

We have not found a precedent upon the question in our books.

In the absence of any decision, we concluded to apply the rule of law relating to costs on appeal in the following manner:

The plaintiff asked to have judgment amended by increasing the amount.

The defendant asked to have plaintiff's demand rejected.

He recovered judgment to the extent allowed in the District Court.

The defendants did not recover any part of their demand.

As the judgment was not amended, and the defendants did not recover, we conclude that costs should be borne by the latter.

Costs are to be paid by the appellee, as above stated, when the judgment is affirmed.

The unsuccessful appellees are the defendants.

It is therefore ordered, adjudged and decreed that our original judgment be amended to the extent that the appellees, J. A. Landry and Daniel J. Landry, will have to pay costs of appeal.

Rehearing refused.