No. 2997

Second Circuit

---

## PHELPS v. UNITED CARBON COMPANY

---

(December 21, 1927.  Opinion and Decree.)
(March 14, 1928.  Rehearing Refused.)
(May 7, 1928.  Writ of Certiorari and Review denied by Supreme Court.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 158.**

The intentional slaying of an employee by a co-employee on the master's premises and while on duty from motives of jealousy or revenge growing out of alleged relations of the slain to the family of the slayer and in no way connected with or growing out of their employment by the common master is not compensable as an accident arising out of or in the course of the slain man's employment within the contemplation of the employers' liability law, Act No. 20 of 1914 as amended.

Conoway vs. Marine Oil Co., Ltd., 162 La. 147, 110 So. 182; Myers vs. La. Ry. & Nav. Co., 140 La. 937, 74 So. 256; Pickett vs. Southern Carbon Co., No. 2984 on the docket of this court, this day decided.

Appeal from the Fourth Judicial District Court, Parish of Ouachita. Hon. Percy Sandel, Judge.

Action by Mrs. Zonie B. Phelps against United Carbon Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

J. M. Munholland; John E. Johnson, of Monroe, attorneys for plaintiff, appellant.

John C. Hollingsworth; McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for defendant, appellee.

## STATEMENT OF THE CASE.

REYNOLDS, J. This is a suit by Mrs. Zonie Blackwell Phelps individually and as natural tutrix of her minor children, Langford Phelps and Thaddeus Phelps, issue of her marriage with Willie A. Phelps, deceased, to recover compensation from the United Carbon Co. under the Workmen's Compensation Law (Act No. 20 of 1914 as amended) for the death of her husband, Willie A. Phelps.

She alleged that her husband was employed by defendant in the capacity of production foreman at a weekly salary of $36.16—2/2 and the use of a dwelling house without cost worth $5.00 per week, and—

"That at about the hour of seven o'clock A. M., on August 13th, 1926, while acting within the scope of his employment, he went to the bath room of the plant to put on his working clothes, which was necessary for the proper discharge of his duties, and which, during all the time of his employment he had been instructed and ordered to do by his employer, and that while in said bath house and acting in a perfectly lawful and peaceful way, he was unlawfully and maliciously assaulted by one Augusta McDougal, a co-employee, and was by the said Augusta McDougal, without provocation, or lawful cause whatsoever, intentionally shot and killed by the discharge of a pistol in the hands of and operated by the said Augusta McDougal."

And, by amended petition, the plaintiff supplemented the foregoing paragraph with additional allegation—

"That the death of the said Willie A. Phelps resulted from and was caused by an accident arising out of and in the course of his employment with the said United Carbon Company."

The defendant filed exceptions of no cause of action and lack of jurisdiction ratione materiae which, by consent, were referred to the merits, and thereupon it filed an answer denying liability and specially alleging that the slaying of Phelps by McDougal was intentional; that no business relations existed between them connected with defendant's business making necessary the giving or taking of orders between Phelps and McDougal; that the slaying of Phelps by McDougal was not accidental but intentional and occurred while Phelps was intending to cause injury to McDougal or to himself by engaging in combat with McDougal about matters wholly disconnected with defendant's business and the relations of Phelps and McDougal thereto; and that the enmity between Phelps and McDougal provoking the slaying of the former by the latter arose solely out of private matters between them and in no way connected with their relationship as employees of defendant.

Defendant further alleged that at the time of the death of Willie A. Phelps plaintiff and her minor children were not living with or being supported by

him and that he was not contributing in whole or in part to their support.

On these issues the case was tried and there was judgment rejecting plaintiff's demand and dismissing her suit and she appealed.

## OPINION

The only question for our decision is, was the slaying of Willie A. Phelps by Augusta McDougal an accident arising out of his employment by defendant, within the contemplation of the employers' liability law (Act No. 20 of 1914 as amended).

The evidence clearly establishes that the slaying was intentional and that it grew out of troubles engendered by alleged relations between the slain man and the family of the slayer.

One of plaintiff's witnesses, W. H. Eldridge, testified (evidence, pages 10 and 12).

"Q. Did Mr. McDougal make any statement to you on the night before with reference to Mr. Phelps?

"A. Yes, sir; he told me he was going to kill him if he did not go with him and straighten out some family affairs.
* * *
"Q. Are you positive that when Mr. McDougal spoke to you on the evening or night of the 12th of August he told you positively that he was going to kill Phelps on account of family difficulties?

"A. Yes, sir.

"Q. You are positive that that was the statement made to you, family difficulty?

"A. Yes, sir; family affairs.
* * *
"Q. And when you say family difficulties, with reference to what families are you referring?

"A. Well, the two families involved; Mr. McDougal's and Mr. Phelps' families."

Ben Whitfield, another of plaintiff's witnesses, testified (evidence, pages 3, 8, 9).

"Q. During the time you were working there with and under Mr. McDougal, and particularly on the day before or the night before the killing, state whether or not he made any statement to you in regard to Mr. Phelps.

"A. Well, yes, sir.

"Q. What did he say?

"A. He come to me about 3 o'clock that morning and told me Mr. Phelps was to meet him at a filling station down at Ruston, and he said he got there one minute to 11 o'clock and waited for him, and he didn't come. Since he didn't come, he said, he was going to kill him.

"Q. Did he tell you when he was going to kill him?

"A. Well, yes, sir.

"Q. What did he say?

"A. He said to-night was my last night —he had done his last day, I am going to kill him in the morning.

"Q. Now, when Mr. McDougal was doing that talking to you on the 12th of August, 1926, wherein he said that Mr. Phelps had agreed to meet him in Ruston on the 11th of August, 1926, and he didn't, and therefore he, McDougal, was going to kill Mr. Phelps that day—that is the next day?

"A. Yes, sir.

"Q. Did he tell you why he was going to kill him?

"A. Yes, sir, he told me why he was going to kill him.

"Q. What did he tell you? Let's have the statement.

"A. He told me he failed to meet him at the filling station nigh Ruston; he got there one minute of the time he was to meet, and he didn't meet him.

"Q. Did he tell you why he wanted to meet him there?

"A. Yes, sir, he told me why. In part he said there was some difficulty arriving between him and Mr. Phelps concerning of his family, and he wanted to meet him there and talk it over with him.
* * *
"Q. Now, didn't he tell you it was because of some supposedly familiar relations between Mr. Phelps and Mr. McDougal's wife? Now think it over.

"A. Well, that's what I learned. That's what he told me at the time. He failed to meet there and talk over some matters that was to be settled.
* * *

"Q. Tell us as much as he did tell you. Tell us all as near as you remember it now.

"A. That's what he told me. Come to me and squatted down, about 3 o'clock, and says: 'I am awfully sleepy. I haven't slept any. I been mad. Mr. Phelps promised to meet me nigh Ruston at a filling station at 11 o'clock and I got there one minute of the time and stayed there until afternoon and he failed to come. He didn't get there at all. I am going to kill him in the morning. I have made my last night and he has made his last day'."

The testimony of these two witnesses as to what McDougal told them is undisputed.

Counsel for plaintiff contend that under these facts plaintiff is entitled to judgment and they cite in support of their contention the following cases:

Ward vs. Standard Lumber Co., 4 La. App. 89.

In re McNicol, 215 Mass. 397, 102 N. E. 697;

L. R. A. 1916A, 306.

Ferguson vs. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248.

Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 So. 677.

Byas vs. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303.

Myers vs. La. Ry. & Nav. Co., 140 La. 937, 74 So. 256.

Flowers vs. Williams-Rieves Lumber Co., 5 La. App. 49.

We have examined all of these cases and are of opinion that none of them supports plaintiff's contention. It would serve no useful purpose to review them here. Suffice to say that all of them can be differentiated from the instant case which, in our opinion, is controlled by Conaway vs. Marine Oil Co., 162 La. 147, 110 So. 181, also cited by plaintiff, and Pickett vs. Southern Carbon Company, No. 2984 on the docket of this court, not yet reported.

In the latter case the deceased employee was foreman of his employer's gasoline plant at Spyker, Louisiana, and while at work in the usual course of his employment in the gasoline plant he was informed by another employee that one Frank Cox, not an employee, desired to see him; the deceased and Cox met on a wooden platform that leads from the warehouse to the railroad and after a few minutes' conversation Cox drew a pistol from his pocket and shot and killed the deceased. And we held that the death was not an accident arising out of the deceased's employment within the meaning of the compensation act.

We do not think that the hazard to Phelps from the enmity of McDougal was increased by the fact that the latter or both he and McDougal were employees of defendant; on the contrary, we are of opinion that it would have been entirely as great if Phelps or both he and McDougal had not been employees of defendant.

This, apparently, was the view taken of the case by the trial court, and we do not think it erred.

The judgment appealed from is therefore affirmed.