No. 900

First Circuit

---

MILLSPAUGH v. OPELOUSAS COTTON GIN CO., INC.

---

(February 8, 1932. Opinion and Decree.)

---

E. V. Boagni, of Opelousas, attorney for defendant, appellant.

A. V. Pavy and Robert Harry, of Opelousas, attorneys for plaintiff, appellee.

LeBLANC, J. Octave Lewis, a negro employed by the defendant, Opelousas Cotton Gin Company, Inc., was shot by Eastin Nezat, white, a fellow employee, during the afternoon of October 9, 1930, and died as a result thereof on October 11, 1930. His widow, Irene Millspaugh, with whom he was living at the time, contending that he died as a result of an accident and injury which arose out of and in the course of his employment by the defendant, brought this suit for compensation to recover 65 per cent of his alleged weekly average wage of $17 for a period of 300 weeks.

Lewis was the father of two minor children by a prior marriage with one Christine Jones, and the grandmother of these children, Alice Lewis, claiming that they were entitled to one-half of the amount of compensation which might be due, intervened as their tutrix on their behalf, and making substantially the same allegations in her petition, as did the plaintiff, prayed for one-half of the same amount of compensation.

From a judgment in favor of the plaintiffs based on a weekly average wage of $16, the defendant has appealed.

The contention of the defendant is that the negro Octave Lewis and Easton Nezat who shot and killed him, had engaged in an altercation during the morning which led to the shooting in the afternoon, and that as the negro was the aggressor throughout, it is relieved from liability under paragraph 1 of section 28 of the Workmen's Compensation Statute of 1914, which provides that "no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another." The issue presented then is whether or not Lewis was the aggressor and wilfully intended to injure Nezat, whom the defend-

ant claims shot in self defense. On that issue it is conceded that the compensation statute places the burden of proof on the employer, the defendant in this case.

Lewis worked at the press in the cotton gin with another man named Ned O'Pry, one of them stationed on each side. In the pursuance of their work, they used a crow-bar with which to open up the press after the cotton had been pressed into a bale. At the scale right near them, worked a man named Roy Hidalgo who weighed the bale as it came out of the press. The press and scale were on the second floor of the gin. Both O'Pry and Hidalgo testify that Nezat, who it is shown had some authority over Lewis and others, came to Lewis and ordered him to take the crow-bar and follow him, whereupon he proceeded at a rather fast walk down the stairs to the first floor. Lewis followed him, carrying the crow-bar as directed to do, and as his head disappeared down the stairs from their view, they heard a noise which they thought was an explosion, but which in reality was the report of the gun shot. Neither heard a word spoken by either Lewis or Nezat before the shot was fired and O'Pry says that immediately following it, he heard a moan or complaint which he understood was uttered by Lewis. Nezat who is the only other witness to testify concerning what took place immediately before and at the time of the shooting, says that Lewis had threatened him during the morning when he had given him some orders, and that afternoon, when he called him to show him a bolt on the packer that had to be unscrewed, he again menaced him, saying, "Yes, I am going to get you now," and at the same time he "made" for him. He says that he ran downstairs and Lewis grabbed the crow-bar and ran toward him ready to strike him; that he warned him three times not to advance further before he shot him.

Nezat's testimony must, of course, be considered in the light of the circumstances under which he appears as a witness, and really, it is at too great a variance with that given by Hidalgo and O'Pry, who appear to be totally disinterested, to be accepted as the true and correct version of how the shooting occurred. His explanation of how he happened to have brought his shot gun to the gin on that particular day isn't any more impressive than his account of the shooting. His testimony is all that the defendant offers to show that the deceased employee's injury and subsequent death was caused by his wilful intention to injure another. On this, the most important issue in the case, the defendant has failed to carry the burden of proof which the statute places on the employer under the section already referred to.

In the case of Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248, the Supreme Court had to deal with the question of the danger of risk incident to the employment of one who may have an enemy among his fellow employees, and by reason of his almost constant contact with such enemy during working hours, being exposed to assault and bodily harm. It was therein held that "obviously, such risk is greater than it would be to a person not engaged in such employment, because such person is not required to be constantly in the presence of an enemy, should he have one." We believe that the case before us comes under that ruling and that the injury received by the employee, which was an accident within the definition of that term under the statute, arose "out of his employment" and consequently his widow and children should recover compensation.

The amount allowed by the lower court is not questioned, and the judgment is therefore affirmed.