## MORVANT v. ÆTNA CASUALTY & SURETY CO.

### No. 16978.

Court of Appeal of Louisiana. Orleans.
May 30, 1938.

R. E. Baird, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellee.

JANVIER, Judge.

On January 22, 1937, Antoine Morvant, an employee of the Celotex Corporation, was stabbed in the left leg near the thigh by a knife belonging to and held by a fellow-employee, Howard A. Perez. He was disabled by the wound for a period of about six weeks and later an infection developed which disabled him for several additional weeks. Unable to adjust his claim for compensation under the Workmen's Compensation Act—No. 20 of 1914 as amended—he filed this suit against Ætna Casualty & Surety Company, the insurance carrier of the said Celotex Corporation.

The defendant, admitting the employment and the nature of the work, denied that the injury was sustained in an accident arising out of and in the course of the employment, averring, in the answer, that the accident had occurred "while plaintiff and Howard A. Perez were playing; that plaintiff was not acting in the course of or incidental to his employment at the time of aforesaid accident, but on the contrary had turned away from his duties and was engaged in his own personal affairs".

There was judgment dismissing plaintiff's suit and he has appealed.

Morvant and Perez were fellow-employees, engaged in a gang or group or laborers who loaded celotex boards upon dollies so that they might be moved from one location to another. During the course of the work Morvant, either seriously or in play, advanced towards Perez as if to injure him. At the time he held in his hand his pocket knife. Perez either had his knife in his hand or he at once took it out of his pocket, and, with a blade exposed, he moved towards Morvant, who made a step backwards and attempted to catch Perez' hand to prevent his being struck with the knife. In the scuffle the blade pierced Morvant's left leg near the thigh and inflicted the injury on which this suit is based.

Although defendant, in its answer, averred that the employee had been engaged in playing, the evidence as to the encounter indicated the possibility that the employees were engaged in a fight or affray, as a result of which the injury was sustained, and it is contended by defendant that, since the evidence admitted without objection shows that there was such an affray or fight and that the plaintiff was the instigator, there

can be no recovery by him because, under Section 28, par. 1, of the statute, it is provided that "no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another". It thus appears that, when the case was submitted below, there were two alternative defenses—one present by the answer—that the employees were engaged in playing and had turned aside from their work—and the other, which was tendered by the evidence which was admitted without objection, which showed the possibility that the injury had resulted from the deliberate attempt of Morvant to injure a fellow-employee.

Counsel for plaintiff contends that the two employees were engaged in a playful struggle and that neither intended to injure the other and that, therefore, neither can be said to have been the aggressor, and he maintains that it is now well established that, where employees, while at their work, momentarily turn aside to engage in horseplay, they do not step out of character as employees to such an extent as to place them without the protection of the compensation statute.

If the encounter was engendered in "bad blood" and evidenced a serious attempt on the part of the employees to injure each other, then, if Morvant was the aggressor, of course he could not be permitted to recover.

Each of those persons who was present states that Morvant and Perez were playing at the time and that neither had any intention of injuring the other and yet the judge a quo found as a fact that, as a result of words which had "passed" between the two, "plaintiff drew and opened his knife and advanced upon the said Perez", and the record contains evidence which justifies the conclusion that, in spite of the testimony, there was animosity between the two and that the affair evidenced a more serious encounter than a mere playful scuffle during a lull in the work. For instance, although Morvant, on direct examination, made no reference whatever to the fact that he had a knife in his hand and although, on cross-examination, he denied that he had such knife in his hand, until he was confronted by a statement which he had made to the contrary, he finally admitted not only that he had a knife in his hand, but that " * * * I was going to Perez with my knife".

He then stated, after having first denied that he had a knife in his hand at all, that

he had taken out his knife to remove a "little splinter" from "one of my thumbs". Other parts of his testimony show very plainly that his statement that at all times he and Perez were merely engaged in playing does not represent the truth. Note the following statements:

"A. Well, Red say like this, he pulled out his knife and said, 'I will cut your neck off'. He kept coming on me with the knife. I said 'I am afraid of a knife'. He kept on coming on. When I seen him coming on, I grabbed his arm, and he backed me against —I didn't have a chance to get away, and when I turned his arm loose, he shoved the knife in me. * * *

"A. He just walked to me with his knife, and he asked me was I afraid of a knife and I told him yes.

"Q. And then what happened? A. He kept on coming and I grabbed his arm and when I turned his arm loose he shoved the knife in me. * * *

"Q. Isn't it a fact that you were playing with him, both of you, with knives, and the reason you got stabbed in the scuffle was that you accidentally hit his arm and knocked the knife into your leg? A. No, sir, after I turned him loose—

"Q. What? A. —he run, he shoved the knife in my leg.

"Q. Although you were good friends and never had a quarrel, he purposely stabbed you? Yes, sir."

And what of the evidence of the other party, Perez? Though he, too, says that the affair was only a friendly scuffle, he admits that it grew out of an altercation: "A. Well, one morning about 8:30 we was picking up boards with the dolly and I was stacking board on the dolly, and Morvant throwed the board on my hand, and I don't really remember what I told him, and he said it was none of my business, and he pulled his knife and started toward me, and I took my knife and started toward him, and when I reached him he hit my hand and my knife went in his leg."

It is apparent, then, that there is ample evidence to justify the conclusion of the trial judge that the affair evidenced a serious controversy between the two men and we cannot say that he was obviously in error in so concluding.

■ As we have said, there is no doubt that, after the affair had terminated, the two men realized that it was best for all to have it appear that the stabbing had resulted merely from a friendly scuffle and that they attempted to give this impression in their testimony. Bearing this in mind, we conclude that it is this type of case in which it is far better to follow, on a question of fact, the finding of the trial judge, who has seen all of the witnesses and has heard them testify. We are aware of the fact that the burden of establishing such defense rests upon the defendant, for it is one of those special defenses made available by Section 28 of the compensation statute, the second paragraph of which provides that "in determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proofs shall be upon the employer." See Harris v. Lily-White Laundry, La.App., 178 So. 523.

■ Having found, then, that the affair originated in "bad blood", we must next determine whether Morvant was the aggressor because it is only where the plaintiff is at fault in instigating an attack that he is prevented from recovering.

In spite of his denial, there can be no doubt that he was first to draw his knife. The evidence of the other witnesses is clear that he advanced towards Perez before the latter made any movement towards him. He contends that, whatever he may have done before he was struck by Perez, he had evidenced a desire to terminate the play or hostilities and was attempting to retire from the controversy, but it appears that, after Morvant made the first aggressive gesture towards Perez, the retaliatory attack of Perez followed so quickly that there was not time for a realization of the fact that Morvant had ceased hostilities and was attempting to escape. The evidence shows plainly that when Morvant, with his knife in his hand, made a motion towards Perez, Perez immediately attacked him.

Furthermore, he could not be certain that Morvant had definitely determined to end hostilities and we think that, under the circumstances, it is proper to say that Morvant's injuries were sustained as the direct result of his own attempt to injure Perez. It therefore follows that there can be no recovery in compensation.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.