This is a suit for workmen's compensation. Plaintiff, David Gross, claims that on April 22, 1944, at about 11 o'clock a.m. during the course of his employment by the Great Atlantic 
Pacific Tea Company, he sustained injuries as the result of an accident which arose out of his employment and that these injuries have brought about his total, permanent disability to do work of any reasonable character. He alleges that his rate of pay was such as to entitle him to the maximum amount provided by the compensation statute, $20 per week, and he prays for judgment for 400 weeks at $20 per week, and for $250 as medical expenses.
Defendant admits that the work in which plaintiff was engaged was hazardous and within the contemplation of the Employer's Liability Statute, Act No. 20 of 1914, and that the rate of pay of plaintiff was such as to entitle him to the maximum weekly payments if he is entitled to recover on the basis of total, permanent disability, but defendant denies that he sustained his injuries as a result of an accident arising out of the employment and avers that on the contrary he "received his injuries as a result of a fight with another employee" in which he was aggressor and that the said fight resulted from "personal differences between plaintiff and said Johnson (the other employee) and had no connection with or relation to any of the duties which either Johnson or plaintiff were performing or were expected to perform under their employment by defendant."
In the District Court there was judgment dismissing plaintiff's suit and he has appealed.
It appears from the record that Gross was employed in the warehouse of defendant company and that his duties required him to operate a freight elevator and to load and unload from the said elevator certain "flats" on which groceries of various kinds are placed to be moved from one floor to another in the building. On each floor there is a door affording access to the elevator and as the elevator is moved from the floor this door closes and prevents anyone from entering or leaving it unless it is at the proper level for safe entry into or exit from the said elevator. Each door consists of two portions, one of which rises from a space provided in the floor and the other of which descends from the ceiling as the operator prepares to move the elevator. These two sections meet at a point a few feet above the floor.
The record further shows that there had been a mysterious disappearance of a case of sardines and that the officials had made an attempt to discover what employee was responsible. All of the employees who might have been involved were called together and an official of the company asked that the guilty person confess. Plaintiff and another employee, whose name was Thomas Johnson, were among this group. No one confessed and as the various employees were returning to their duties, Johnson said to Gross: "Dave, since nobody didn't admit to eating the sardines I guess you must have ate them * * * ". Gross then walked up to Johnson and slapped him in the face, and immediately retreated towards the elevator. He says that as he entered the elevator and attempted to close the door, he allowed his hand to remain between the two sections and that as they came together his hand was crushed. *Page 839 
[1] Defendant's theory of the accident is that when Gross struck Johnson in the face, Johnson picked up a piece of iron and struck Gross on the hand and that this and not the closing of the elevator door caused the injury on which this suit is based. Gross' statement that his hand was crushed in the door and was not struck by Johnson is corroborated by Johnson but it is contradicted by so many witnesses and by the written statement which Johnson, himself, had made prior to the trial of the case and while he was still in the employ of the defendant company, that we have no hesitation in reaching the conclusion that the District Judge was correct in finding that the injury had been caused by a blow delivered by Johnson with a piece of iron and not by the closing of the elevator doors.
But this conclusion that the injury resulted from the blow by Johnson and not by Gross' having caught his hand in the elevator door does not dispose of the controversy for in the first place, we are presented with the contention that even if Johnson did strike Gross, and even if this resulted from the slap which Gross administered to Johnson, still we should not hold that Gross was the aggressor because the affray was, in reality, started not when Gross slapped Johnson but when Johnson insulted Gross by his insinuation or charge that Gross must have been the one who "ate" the sardines.
Our next investigation therefore must involve the question of whether Gross, having struck the first blow, was the aggressor or whether the words which Johnson spoke to him should be considered as having started the affray.
We have been unable to discover any decision touching upon the question of whether the defense that the injury resulted from the intention of the injured employee to injure himself or another is affected by the fact that the employee whom the claimant attempted to injure had, by words or threats, provoked the assault.
If it is true that Johnson, in effect, accused Gross of having stolen the sardines, and if it is true that that charge was the provocation which prompted Gross to slap Johnson's face, the question is who, in law, should be considered as the aggressor? Was it Gross who actually struck the first blow or was it Johnson who, by his provocative charge, commenced the affray?
There are, of course, innumerable cases touching upon the effect in a tort action or in a criminal prosecution for assault of provocative words. The general rule outside of Louisiana is well established and is to the effect that mere words, no matter how insulting or offensive, will not justify an assault. This rule is stated in 6 Corpus Juris Secundum, Assault and Battery, § 17, on page 807, "Apart from statute no provocative acts, conduct, former insults, threats or words, if unaccompanied by any overt act of hostility, will justify an assault, no matter how offensive or exasperating, nor how much they may be calculated to excite or irritate."
In Louisiana the rule is not so clearly established as is evident from the following quotations from a note to be found in the same volume of Corpus Juris Secundum on page 808:
"In Louisiana
"(1) There are cases which, seemingly, follow the rule set forth in the text, and hold that provocation is no defense although it does go to mitigate damages. — Harvey v. Harvey,124 La. 595, 50 So. 592; Munday v. Landry, 51 La. Ann. 303, 25 So. 66; Quinn v. Banker, La. App., 166 So. 908; Derouen v. Fontenot, 8 La. App. 652.
"(2) Some merely hold that words alone, no matter how provoking, will not justify an assault. — Harvey v. Harvey,124 La. 595, 50 So. 592; Munday v. Landry, 51 La. Ann. 303, 25 So. 67, Richardson v. Zuntz, 26 La. Ann. 313.
"(3) On the other hand, there are expressions in some of the cases which would seem to indicate a contrary rule. Thus, it has been said that one who is himself at fault cannot recover damages for a wrong resulting from such fault, although the party inflicting the injury was not justified in law. — Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662; Bankston *Page 840 
v. Folks, 38 La. Ann. 267; Graham v. McCrory, 8 La. App. 22; Lide v. Parker, 6 La. App. 648.
* * * * * *
"(6) The rule has also been stated to be that one who provokes a difficulty by insults, abuse, threats, or other conduct well calculated to arouse the resentment or fear of another cannot recover for an assault by the latter. — Finkelstein v. Naihaus, La. App., 151 So. 686; Guillory v. Fontenot, 2 La. App. 189.
"(7) One case, however, throws some light on the true rule in this state by saying that in those cases where provocation was held to be a defense there were present some act of physical aggression or threat of violence on the part of the complainant, and holds that provocation short of this is not a complete defense. — Harvey v. Harvey, 124 La. 595, 50 So. 592."
[2] We think, after a consideration of all of these cases, that the Louisiana rule is that provocative words may be pointed to as justification for an assault provided those words were such that under the circumstances it should have been assumed that physical retaliation would be attempted. The views expressed by us in Randall v. Ridgley, La. App., 185 So. 632 and in Bacas v. Laswell, La. App., 22 So.2d 591, are consistent with this conclusion.
As we have said, we have found no cases which throw any real light upon the question of what effect should be given to the fact that insulting or abusive words are the forerunner of an affray. Miss Mayer in her very interesting book entitled "Workmen's Compensation Law in Louisiana", on page 67, in a discussion of the special defenses set forth in Section 28, says: "* * * Mere derogatory or inciting words, not being sufficient according to tort rules to justify an assault and battery in self-defense, would probably not be considered a wilful intention to injure under the liberal doctrine of Workmen's Compensation."
Miss Mayer also says that "It is not plain * * * whether inciting words constituting a provocation will furnish grounds for an application of the defense * * *." and in support of the statement cites Gilyard v. O'Reilly, 4 La. App. 498. A reading of that decision convinces us that Miss Mayer is correct when she says that it is not plain whether a provocation furnished by words should be given any effect in deciding whether the defense of Section 28 is available.
[3] While it is true that we have nothing to indicate that the rule as to provocation, which has so often been discussed in this state in criminal matters and in actions in tort, may be made use of to determine who should be considered the aggressor in an affray which forms the basis for a claim in compensation, we see no reason why that rule should not be considered in a compensation case for in truth the fundamental reason for the rule exists in compensation cases as well as in matters of tort or of assault. The reason is that one who uses words or actions which it may be expected will bring about an attempt at retaliation has only himself to blame, if as a result of the attempt at retaliation he, himself, is injured.
If this reasoning is sound then, in an effort to determine who is responsible as the aggressor in an affray which is commenced by words, it becomes necessary to determine whether the words were such as to justify the conclusion that it should have been anticipated that physical retaliation would be attempted.
In attempting to determine this all of the facts and circumstances must be taken into consideration because words, which, under certain conditions, might be passed without any expectation of physical retaliation, might, under other circumstances, be looked upon as the certain forerunner of a violent physical encounter.
[4] In the case at bar we find two negro laborers who had just returned to their respective stations from a meeting at which it had been charged that some employee had stolen sardines from a box in the employer's warehouse. The words which were spoken were obviously not seriously spoken and neither the word "thief" nor the word "steal" was used. Under all these circumstances, even if they were seriously spoken or even if the employee to whom they were addressed believed they were *Page 841 
seriously spoken, we do not think that it could reasonably be anticipated that they would lead to blows. We therefore feel that when Gross walked up to Johnson and slapped his face, he was the aggressor and his act and not the words of Johnson, commenced the affray.
Having concluded that Gross was the aggressor, we are still confronted with the question of whether his aggressive act constituted "wilful intention to injure himself or to injure another." It must be remembered that the special defense numbered "(1)" in subdivision 1, Section 28 of the Compensation Statute is not based on whether or not the injured party was the aggressor but solely on whether his act amounted to a wilful intention to injure himself or to injure another. It is argued that a mere slap in the face cannot be considered as a wilful attempt at injury.
[5] Still, however slight an injury a slap in the face may cause, it may cause an injury of some kind and it is certainly calculated to start an encounter from which injury to some one is likely to result. And that is what the framers of the act had in mind when they inserted that defense. They no doubt felt that if an employee should wilfully do anything calculated to lead to injury to himself or to some one else, he should not recover if he, himself, should sustain the injury.
Still another contention is presented on behalf of plaintiff. It is that even though he may have been responsible for starting the trouble and even though it may appear that the injury therefore resulted from his own wilful attempt to injure either himself or another, nevertheless there may be recovery for the reason, says counsel, that the affray arose out of company business and, therefore, the defense of Section 28 as to wilful attempt at injury is not available. To repeat this contention, it is merely this that if two employees commence a dispute over something connected with the work they are employed to do, and one strikes the other, the defense of Section 28 is not available even though the aggressor may be plaintiff.
The defendant contended that the injury had not been sustained in the course of employment. We found that there had been no assault but that during the course of employment there had been an accident growing out of the work, and that in this accident the plaintiff had sustained serious injury. Necessarily we said that plaintiff's failure to prove that he had been assaulted did not deprive him of his right to recover since he had sustained the injury in an accident occurring in the course of and arising out of the employment. That case is not authority for the view that even an aggressor may recover for injury if the injury grows out of an altercation concerning company business.
There are two primary questions to be resolved in reaching a decision on this question: (1) Did the accident arise out of and in the course of the employment (Sec. 1 of the Act); (2) Does the fact that the injured party was the aggressor in an encounter reflect a wilful intent to injure another render Section 28, Par. 1(1) applicable if the occurrence arises out of and in the course of the employment. It is clear that if the answer to the first question is in the negative and/or the answer to the second is in the affirmative, recovery cannot be allowed.
[6, 7] It is firmly established in the jurisprudence that an assault is considered as an "accident" under the act. The Louisiana Supreme Court in Myers v. Louisiana Ry. Nav. Co., 1917, 140 La. 937, 74 So. 256, set out the following general test in determining whether an injury arises out of the employment: the risk from which the injury results must be greater for the workman than for a person not engaged in the employment. This rule is applied in any case in which the accident is the result of an assault. Thus, in 1923, in Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677, the court, considering an assassination of an employee at night by an unknown person while the employee was making a fire in defendant's locomotive in an isolated locality, held that the accident arose out of the employment. This case has been followed subsequently by many cases in which recovery has been allowed on that theory. In 1924, the Dyer case was followed in Ferguson v. Gady-McFarland *Page 842 
Gravel Co., 156 La. 871, 101 So. 248, 249, where the court allowed recovery where a track employee, who was in a stooping position, was intentionally struck with an iron instrument in the hands of a fellow employee. The court stated that an employee "who may have an enemy among his fellow employees in the same gang in which he is required to work, necessarily comes in contact with such enemy throughout all hours of the day, and is constantly exposed to assault and bodily harm."
However, in 1926, in Conaway v. Marine Oil Co., 162 La. 147,110 So. 181, the Supreme Court held that, where the deceased was in charge of defendant's gasoline station, and while so engaged was accidentally shot by a careless co-employee, compensation was not recoverable as the accident did not arise out of the employment since the employment did not expose him to accidental shooting, especially where it was not even shown that the gun was provided for use in the business of the employer. Later, the Court of Appeal for the Second Circuit denied compensation in Pickett et al. v. Southern Carbon Co., 7 La. App. 296, where the deceased was called off of the job by a non-employee, who asked to see him, and was shot by that person without any provocation. The court stated that the accident did not arise out of the employment as deceased's employment did not bring him into contact with the attackers, nor did such employment subject him to any greater risk or peril than that to which he would have been subjected if he had not been so employed. These cases were cited by the Court of Appeal in Phelps v. United Carbon Co., 1927, 8 La. App. 128 (writ of certiorari and review denied by Supreme Court in 1928) to sustain its holding denying recovery where deceased, while changing into his work clothes, was shot by a co-employee, the evidence showing that the co-employee had declared his intention to kill deceased because of a family quarrel. Thus, in these cases a result opposite to that reached in the Myers case was arrived at indicating a more strict and limited interpretation of the act in all of the above cases it is clear that the injured party was obviously not the aggressor. In fact in none of them was there an argument or encounter immediately prior to the assault.
The cases of Conaway v. Marine Oil Co., Pickett et al. v. Southern Carbon Co. and Phelps v. United Carbon Co., supra, were virtually overruled, as pointed out in the Milton case, infra, by the decision in Keyhea v. Woodard-Walker Lumber Co., La. App., 1933, 147 So. 830. In that case the evidence indicated that illfeeling existed between deceased and a co-employee due to jealousy. On the morning in question deceased informed the other employee that he would kill him when he returned from work. On his way back to the main mill at the end of the day, deceased was riding on the front of the log-train locomotive, as customary, when, without warning or aggression on his part, he was shot by the co-employee from the ground beside the track. The court held compensation should be allowed as it was an accident arising out of and in course of employment, notwithstanding deceased's threat. The employer did not establish the defense that the death was due to the employee's wilful intention to injure another. There was a vigorous dissent in which it was stated that since by his own wilful act deceased had invited this assault and made it reasonably inevitable, it would have occurred wherever he was found, and did not arise out of the employment.
This case, then, swings back to a liberal application of the rule followed in the Myers case and also raises the question of the defense under Sec. 28 where there has been an argument or an actual encounter.
Where a bell boy had engaged in an argument with a taxi driver over baggage, but had returned to the hotel lobby and was later approached by the driver and shot, compensation was allowed, as it was clear that there was no intention on the part of the bell boy to injure the driver. The court also held that the accident arose out of the employment. Byas v. Hotel Bentley, Inc., 1924, 157 La. 1030, 103 So. 303.
In the case of Fisher v. Sherill Hardwood Lumber Co., 1926, 3 La. App. 595, the *Page 843 
court denied compensation under Par. 1 of Sec. 28, where deceased started an argument with his foreman about the work, demanded his "time" and then followed the foreman, attacking him, whereupon he was shot in the encounter.
However, in Gilyard v. O'Reilly, 4 La. App. 498, compensation was allowed where plaintiff, who started an argument with his foreman over wages, and advanced on him with a shovel, was struck by the foreman. The court stated that advancing with the shovel without any other hostile act was not provocation for the fight.
Where the deceased and a co-employee engaged in a quarrel over the manner in which each was doing the employer's work, and fifteen minutes later, without further provocation, the co-employee hit the deceased in the head with an iron pipe, the court allowed compensation under the Ferguson, Byas and Gilyard cases. Brown v. Goodpine Lumber Co., 1928, 8 La. App. 123, writs of certiorari and review denied by Supreme Court in 1928. For a similar case see Millspaugh v. Opelousas Cotton Gin Co., 1932, 19 La. App. 78, 139 So. 666.
Section 28 was not discussed in Brown v. Vacuum Oil Co., 1930, 171 La. 707, 132 So. 117, as the court obviously felt there was no assault with intent to injure. The facts showed that the plaintiff turned a water hose which he used in his work on a co-employee, whether intentionally or accidentally not being proven. The co-employee, resenting the wetting, attacked plaintiff to wrest the hose from him and, when both slipped on the wet floor, the injury was sustained. After finding that the accident arose out of and in the course of the employment, the court stated that it was immaterial whether plaintiff was guilty of a fault in throwing the water, even assuming that plaintiff's act was sufficient provocation for engaging him in a friendly scuffle for possession of the hose. It seems clear that the court made no reference to Section 28.
In Pierson v. Sterling Sugars, La. App., 1933, 149 So. 903, the deceased called a co-employee from his place of work, then attacked him, whereupon he was killed with a piece of iron in self-defense. The court refused compensation under Par. 1 of Sec. 28 as deceased quit his work and sought and engaged in a personal difficulty with the wilful intention of injuring a fellow employee. The court refused to follow the cases cited by plaintiff (not listed in the opinion) saying that in each the employee had been engaged in the service of the employer and was performing service arising out of and incidental to his employment, and that that was not the situation in the Pierson case. In the light of many earlier cases it might have been held to have been an accident arising out of employment, but that compensation should be denied because of the special defense of Sec. 28, Par. 1.
In a later case, decided by us in which the denial of compensation was based solely on Sec. 28, Par. 1, we felt that the accident had arisen out of the employment. Morvant v. Ætna Casualty Surety Co., La. App.,1938, 181 So. 595. There the evidence showed that plaintiff, after some argument with a fellow employee advanced on him in a threatening manner, with an open knife in his hand. The co-employee drew his knife and stabbed the plaintiff in the ensuing scuffle. We held plaintiff to be an aggressor in a "bad blood" encounter and denied recovery.
In a very recent case, Milton v. T. J. Moss Tie Co., La. App.,1944, 20 So.2d 570 (certiorari refused by Supreme Court in 1945) the court allowed compensation, holding that the accident had arisen out of the employment and that defendant had failed to establish the special defense of Sec. 28, Par. 1. The facts as found by the court were that the deceased and a co-employee were working in close proximity, the co-employee using an axe in his work. When the deceased walked close to where the other employee was standing, he was struck with the axe. From the facts there is justification for saying that there must have been prior existing enmity between the two, but although the slayer claimed that the deceased "cussed" him, it does not appear that the deceased made any threatening advance.
With regard to the defense of Section 28, the injured employee can be precluded from *Page 844 
recovery under that ground as he struck the first blow.
[8, 9] We conclude that it is well established that in considering whether an accident arises out of and occurs in the course of employment, the statute should be liberally interpreted in favor of the claimant and that recovery should be allowed unless some special defense such as those set forth in Section 28 is clearly established. By such a defense the case is removed from the general rule. In the case at bar the accident can be said to have arisen out of the employment but there can be no recovery because of the effect of Par. 1 of Section 28.
[10] From the cases which we have discussed, we form the conclusion that mere verbal arguments or verbal provocations, unless they are extremely serious, should not be considered as the commencement of such affrays as this. We think that we should look to the first physical act or the first threat of violence accompanied by an apparent attempt to carry out the threat. Here the first act of violence was the slap in the face which Gross administered to Johnson. Since that first act was committed by Gross, himself, he cannot recover.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.